We granted the writ of certiorari in this case to review petitioner's claim that the Alabama Crime Victims Compensation Act (Ala. Code 1975, § 15-23-1 et seq.) was improperly and unconstitutionally applied, and that the trial judge erred in assessing the maximum fine allowed by the Act against the petitioner.
 FACTS
Petitioner was indicted on a charge of murder, and was convicted of manslaughter. The trial judge sentenced him to 10 years' imprisonment, fined him $3,000, and assessed a $10,000 sum against him under the provisions of the Alabama Crime Victims Compensation Act.
Petitioner appealed his conviction to the Court of Criminal Appeals, and that Court affirmed, without writing an opinion. Petitioner complied with the provisions of Rule *Page 371 
39(k), Ala.R.App.P., and raised two issues, one dealing with an alleged error in his trial, and the other concerning the proper application of the Alabama Crime Victims Compensation Act. We review only petitioner's claims concerning the Alabama Crime Victims Compensation Act.
In a multi-faceted attack upon the trial court's application of the Act, petitioner raises these questions:
1. Did the trial court improperly consider the noneconomic impact of the crime, such as emotional suffering by the victim's spouse and friend, in determining the amount of the victim compensation assessment?
2. Did the trial court err in construing the assessment to be a direct award by the court to the victim's family members and friend?
3. Was the trial court's consideration of the impact of the crime upon individuals not named in the Act as potential claimants error?
4. Could the trial court impose a $10,000 victim compensation assessment even though this sum exceeded the amount that a court could assess as a fine for manslaughter, a class C felony at that time?
5. Was the $10,000 assessment an "excessive fine" under the provisions of either the federal or the Alabama constitution?
Pursuant to the provisions of Rule 39(k), petitioner set out the following, which occurred in connection with the assessment made by the trial judge under the Victims Compensation Act:
 "As part of its sentence, the Court imposed a $10,000.00 victim compensation assessment (RT-272). The victim compensation assessment was objected to on the ground that the statute providing for such required the Court to consider specific factors in determining that assessment, as to which factors there had been no showing the Court had considered them (RT-275). The Court then stated that it was, in fact, considering the factors set out in the Victim Compensation statute, being, the severity of the crime, the defendant's prior criminal record; the ability of the defendant to pay; and the economic impact of the victim compensation assessment on the dependents of the defendant (RT-276). The following then occurred:
 " 'THE COURT: But I do have to consider the impact on the victims also and I am considering that impact and there is no reason why the victim should suffer an impact without having it alleviated to some extent. This restitution in no way will make up for the personal loss that the ex-husband of the victim has suffered, that Ms. Hopkins has suffered, and that the victim's best friend, who is in court with us — what is your name, please, ma'am?
" 'MS. HENDERSON: Gloria Henderson.
 " 'THE COURT: Gloria Henderson, yes, has suffered. So, I am going to stick with my order on the victim compensation assessment.
 " 'MR. COPELAND: For the record, we object to it. We object to Your Honor's considering the impact on the victim's family in terms of emotional suffering. We object to the —
 " 'THE COURT: No, I am simply saying that the compensation doesn't make up for that as it is. It goes in small part to compensating them pecuniarily.
 " 'MR. COPELAND: We object to it as erroneous, disproportionate, and constituting an excessive fine. [RT-276-277.]
" '* * * *
 " 'THE COURT: All right. Thank you both. [RT-278.]"
Before addressing the questions raised by petitioner, we deem it advisable and helpful in this case of first impression to review briefly the history and development of victim compensation legislation, in general, and the purpose of the Alabama Crime Victims Compensation Act, in particular.
Crime victim compensation is not new. It was a part of many ancient legal codes. Lesley J. Friedsam, in an article in the *Page 372 
Florida State University Law Review, sets out some of the historical origins of such laws:
 "Concern for crime victims is not new and has been found to be most evident during periods of heightened criminal activity. Often, heinous offenses have served as catalysts increasing public awareness of the catastrophic effects of criminal activity on innocent people.
 "Predating contemporary interest is a wealth of literature stressing the cross-cultural and religious origins of compensating crime victims. Indemnification of the victim by the offender or his family was a foundation of primitive and early western law. Perhaps the most frequently cited authority for current efforts by government to compensate crime victims is the 1775 B.C. Code of Hammurabi of ancient Babylonia:
 " 'If the robber is not caught, the man who has been robbed shall formally declare whatever he has lost before a god, and the city and the mayor in whose territory or district the robbery has been committed shall replace whatever he has lost for him.
 " 'If [it is a] life [that is lost], the city or the mayor shall pay one maneh of silver to his kinsfolk.'
 "This early emphasis on victim compensation gradually changed. Modern commentators have provided numerous perspectives on the evolution of victim compensation throughout history, which led to monopolization of criminal redress by the state. Wrongful acts were classified as offenses against the public, and the state became interested only in punishing and rehabilitating the offender. Eventually, the victim's only remedy for individual injuries was a civil action in tort against the offender.
 "Dissatisfied with this result and encouraged by public interest groups, a number of jurisdictions began to direct their attention to crime victims. In 1964, New Zealand became the first jurisdiction in modern times to establish a special program for compensating crime victims. In 1965, California became the first state to enact a crimes compensation statute. New York quickly followed in 1966."
L. Friedsam, "Legislative Assistance to Victims of Crime: The Florida Crimes Compensation Act," 11 Fla.St.U.L.Rev.
859 (1984).
Most of the States now have crime victim compensation acts. The Alabama Legislature adopted our act in 1984. Act No. 84-658, 1984 Ala. Acts. Section 2 of the Act (codified at §15-23-2) stated its purpose:
 "The legislature hereby finds, determines and declares that victims of violent crime are often reduced to bereft and destitute circumstances as a result of the criminal acts perpetrated against them, that the financial or economic resources of such victims and their dependents are in many instances distressed or depleted as a result of injuries inflicted upon them by violent criminals.
 "That the general social and economic welfare of such victims and their dependents is and ought to be intimately affected with the public interest, that the deplorable plight of these unfortunate citizens should not go unnoticed by our institutions and agencies of government.
 "The legislature hereby further finds, determines and declares that it is to the benefit of all that victims of violence and their dependents be assisted financially and socially whenever possible.
 "To this end the legislature intends to provide a means whereby victims of violent crime and their dependents may be provided compensation in the amount of actual expenses incurred as a direct result of criminal acts of other persons.
 "The provisions of this article are to be construed so as to accomplish this purpose and to promote the same which is hereby declared to be the public policy of this state."
The theoretical justifications for victim compensation laws are: 1) public assistance to the sufferers; 2) the social obligation of the state to indemnify the victim of crime; and 3) the loss of the victim of crime as a judicial question. *Page 373 
One commentator, who proposes a program of correctional restitution, comments on the purpose of victim compensation schemes, as follows:
 "Compensation is a responsibility assumed by society; it is civil in character, and thus represents a non-criminal welfare goal. Restitution, on the other hand, allocates responsibility to the offender; a claim for restitution by the criminal is penal in character, and thus manifests a correctional goal in the criminal process."
Schafer, "Victim Compensation and Responsibility," 43S.Cal.L.Rev 55, 65 (1970).
Having completed a short historical background and analysis of victim compensation schemes, we now address specifically petitioner's arguments.
 I
First, we consider whether the trial court erred in considering the noneconomic impact upon the victim's family and friend in determining the amount of the assessment.
Petitioner argues that noneconomic loss or detriment to a victim's family, specifically noneconomic loss or detriment such as mental anguish or emotional suffering, is not a permissible factor for a sentencing judge to consider in making an assessment under the Act. He argues that § 15-23-8, which deals with awards of compensation to crime victims from a fund created by the Act, specifically authorizes compensation only for economic loss, which is specifically defined in §15-23-3(11), and he argues that "non-economic loss or detriment," which is defined in § 15-23-3(12) as "pain, suffering, inconvenience, physical impairment and nonpecuniary damage," is not compensable.
The State argues that § 15-23-17(b), which was part of the Act, provides that any person convicted of or pleading guilty to a felony must pay an assessment of at least $25.00 and may be required to pay up to $10,000 and that the list of factors set out in § 15-23-17(b) is not an exclusive listing.
We agree with the State's argument. Section 15-23-17(b) provides:
 "(b) In addition to the imposition of any other costs, penalties or fines imposed pursuant to law, any person convicted or pleading guilty to a felony shall be ordered to pay a victim compensation assessment of not less than $25.00, nor more than $10,000.00, for each such felony for which such person was convicted. In imposing this penalty, the court shall consider factors such as the severity of the crime, the prior criminal record, and the ability of the defendant to pay, as well as the economic impact of the victim compensation assessment on the dependents of the defendant. Such additional assessment or penalty shall be collected by the clerk of the court imposing the same and shall be promptly paid over to the commission."
Although the Legislature specifically listed several factors that a sentencing judge should consider, we find that this list is not exhaustive. The fact that the Legislature used the words "such as" indicates that the sentencing judge could consider factors other than those listed. The words "severity of the crime" contemplate that some crimes are more reprehensible than others and that they produce greater emotional suffering and societal disdain; therefore, we hold the trial judge was authorized to consider the fact that the crime was "severe" because of its noneconomic impact upon family, friends and society.
 II
Second, we consider whether the trial judge was authorized to impose both a fine and an assessment under the provisions of the Crime Victims Compensation Act, and also whether the assessment of the maximum amount in this case constitutes an "excessive fine" under the federal and state constitutions.
We hold that the trial judge was authorized to impose both a fine and an assessment under the Crime Victims Compensation Act and that the total amount of the fine and assessment does not constitute an "excessive fine." *Page 374 
The $10,000 assessment and the $3,000 fine are both authorized, under the provisions of § 15-23-17(b) and §13A-5-11, respectively.
Section 15-23-17(b) provides in pertinent part:
 "In addition to the imposition of any other costs, penalties or fines imposed pursuant to law, any person convicted or pleading guilty to a felony shall be ordered to pay a victim compensation assessment of not less than $25.00, nor more than $10,000.00, for each such felony for which such person was convicted."
Section 13A-5-11(a)(3) provides:
 "A sentence to pay a fine for a felony shall be for a definite amount, fixed by the court, within the following limitations:
 "(1) For a Class A felony, not more than $20,000.00;
 "(2) For a Class B felony, not more than $10,000.00;
 "(3) For a Class C felony, not more than $5,000.00; or
 "(4) Any amount not exceeding double the pecuniary gain to the defendant or loss to the victim caused by the commission of the offense."
The first sentence of § 15-23-17(b) clearly states that the victim compensation assessment is intended to be "[i]n addition to . . . other costs, penalties or fines imposed pursuant to law." The intent of the Legislature is plain and will be enforced.
Petitioner's arguments that the total amount of the fine and assessment constitutes an "excessive fine" have no merit. In a civil setting, in which punitive damages are recoverable for wrongful death, this Court has upheld substantial awards when the death was negligently, not intentionally, inflicted. See, e.g., Black Belt Wood Co. v. Sessions,514 So.2d 1249 (Ala. 1986), and Alabama Power Co. v.Cantrell, 507 So.2d 1295 (Ala. 1986), appeal dismissed,486 U.S. 1028, 108 S.Ct 2008, 100 L.Ed.2d 596 (1988).
We hold that the Legislature has the power to authorize both a fine and an assessment under the provisions of the Alabama Crime Victims Compensation Act, and that the amount of this particular assessment is not "excessive."
 III
The last question we address is whether the judgment should be reversed on the basis that the trial judge was mistaken concerning the persons who would receive any amount that he assessed under the provisions of the Act.
The trial court was apparently mistaken concerning the method for payment of victim compensation when he stated that "there is no reason why the victims should suffer an impact without having it alleviated to some extent" and in further stating that "[t]his restitution will in no way make up for the personal loss that the ex-husband of the victim has suffered, that Ms. Hopkins has suffered, and that the victim's best friend, . . . Gloria Henderson . . . has suffered. . . . It goes in small part to compensating them pecuniarily."
Petitioner states that "[w]e can only speculate as to what [assessment] the trial court would have imposed had it been aware of the proper procedure by which claimants may obtain awards from the fund, but the court's erroneous rationale in imposing the Victims Compensation Act [assessment] leaves no alternative but to reverse the assessment and remand the matter for reimposition."
The State concedes that "[p]etitioner correctly states that the Crime Victims Compensation Commission administers the fund into which assessments are made and within its discretionary authority considers claims made [against] the fund," but argues that "[e]ven if the trial court's understanding of the nature and use of the assessment was incorrect, it does not alter the fact that the amount of the assessment is proper and within the statutory range."
The State contends that "[s]ince the Act does not restrict or limit the factors to be considered by the trial court, this does not warrant reversal of this case." We cannot agree with the State's argument on this point. *Page 375 
Because the trial court was mistaken as to the applicable law, we cannot say with certainty that its assessment under the provisions of the Alabama Crime Victims Compensation Act would have been the same; therefore, we must set aside that assessment and remand the cause to the Court of Criminal Appeals for further proceedings consistent with the law as set out in this opinion.
We do not hold that the trial court cannot impose the maximum assessment if such an assessment is consistent with the guidelines set out in § 15-23-17(b), as herein interpreted.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.