Christine E. Beggs was convicted of trafficking in cocaine in violation of Ala. Code 1975, § 20-2-80(2) (transferred to §13A-12-231(2) effective September 30, 1988), and was given the minimum sentence of three years' imprisonment and a $50,000 fine. She raises three issues on this appeal of that conviction. *Page 379 
The State's evidence reveals that for a substantial period of time the residence located at 8395 Morris-Sardis Road in Morris, Alabama, had been under surveillance by the Jefferson County Sheriff's Department. This house was owned by Earl Peyton's mother and Peyton "lived there." On July 1, 1987, Peyton, then the city prosecutor of the City of Morris, was "on a program for cocaine addiction out of the state." The sheriff's investigation centered on Peyton and a person named Ray Rhia.
At 2:15 on the afternoon of July 1, 1987, a paid informant, Debbie Erwood, and sheriff's deputy Terry Radigan purchased cocaine from Rhia. This purchase was made in the residence and the defendant was not present at this time. At 6:30 the deputy and the informant returned and made a second purchase of cocaine from Rhia. This purchase was made "just outside the carport of the residence." Although the defendant did not participate in this transaction, deputy Radigan testified that the defendant was inside the residence looking out the window and was "in a position to oversee the drug deal I was making on the carport."
Immediately after the drug transaction was completed and upon a prearranged signal, deputies arrived at the residence and arrested Rhia. Other deputies, armed with a search warrant, heard occupants inside the house "moving around." They announced their presence as they kicked in doors and entered the house. The defendant was in the dining room-kitchen area. There was no evidence that she made any attempt to flee or escape. The defendant told the deputies she lived in Illinois.
The defendant was searched. Inside her purse was found a Bayer aspirin bottle or tube containing .035 gram of cocaine and a cigarette butt which contained .66 gram of marijuana "as well as seeds." A search of the house uncovered 310.292 grams of cocaine, 30.55 grams of marijuana, and three or four cocaine smoking pipes. The drugs were located throughout the house and some of the drugs were in plain view. The contraband in plain view on a table in the living room included a shaving kit filled with seven plastic bags, each containing cocaine. Also found on the table in the living room were two Bayer aspirin bottles containing cocaine.
 I
First, the defendant argues that the evidence was insufficient to support her conviction for trafficking in cocaine. She claims that while the State proved her possession of .035 gram of cocaine in her purse, it did not prove her constructive possession of the remainder of the cocaine found throughout the house.
"[W]here a person is in possession, but not exclusive possession of premises, it may not be inferred that he knew of the presence of any controlled substance found there unless there are other circumstances tending to buttress this inference." Temple v. State, 366 So.2d 740, 743 (Ala.Cr.App. 1978). See also Ex parte Wells, 527 So.2d 762, 763-64 (Ala. 1988). "[M]ere presence at the scene of a crime, without more, [does not make] an accused a party to the crime. . . . But when the presence of the accused at the scene is established and evidence of his knowledge of the presence of the prohibited substance is shown, along with any other incriminating evidence, the issue of the defendant's guilt should be submitted to the jury." Radke v. State, 292 Ala. 290, 292,293 So.2d 314, 316 (1974). In addition to presence, there must be "incriminating evidence which indicates an interest in or that [the accused] is aiding or abetting the possession." Hudson v.State, 249 Ala. 372, 372-73, 31 So.2d 774, 775 (1947).
Here, the defendant's knowledge of the presence of cocaine throughout the house can be inferred from the fact that the cocaine residue in her purse was contained within a Bayer aspirin bottle, the same type container as that found in plain view on the living room table. The inference that like containers held like substances, and that defendant was aware of the contents of both, as well as the method of packaging, was a reasonable one under the circumstances. The Bayer aspirin bottle *Page 380 
on the living room table was also in close proximity to the shaving kit, which held seven bags of cocaine. "[P]roximity to illegal drugs, presence on the property where they are located, or . . . association . . . with persons who do control" the drugs may be sufficient to support a finding of possession when accompanied "with testimony connecting the [accused] with the incriminating surrounding circumstances." United States v.Ratcliffe, 550 F.2d 431, 434 (9th Cir. 1976).
Although the defendant argues that she was merely a social guest, with no intent to participate in the illicit activity occurring on the premises, the jury was entitled to infer otherwise from the presence of cocaine in her purse, the sheer quantity of contraband located throughout the house, and her opportunity to observe the drug transaction on the carport. " '[T]he voluntary presence of the accused in an area obviously devoted to preparation of drugs for distribution is a circumstance potently indicative of his involvement in the operation.' [United States v.] Staten, 581 F.2d [878, 885 n. 67 (U.S.App.D.C. 1978)] citing United States v. Davis, 183 U.S.App. D.C. 162, 562 F.2d 681 (1977)." German v. State,429 So.2d 1138, 1142 (Ala.Cr.App. 1982). Furthermore, from the fact that the regular occupant of the residence was absent "on a program for cocaine addiction out of the state," and the fact that the current occupant of the residence had been the focus of an ongoing drug surveillance, the inference arises that the defendant knew the house was being used as a drug distribution center or "drug den," see Robinette v. State, 531 So.2d 697,699 (Ala. 1988). Compare Mobley v. State, 563 So.2d 29
(Ala.Cr.App. 1990) (evidence that accused was apprehended with "a small quantity of cocaine" and was found in proximity to other cocaine in plain view sufficient to convict of trafficking of the entire amount); Finch v. State,553 So.2d 685 (Ala.Cr.App. 1989) (evidence that accused, who had no contraband on her person but was found in a "crack house" with cocaine 18 inches from her head, sufficient to convict of possession of the cocaine nearest her).
We hold that the state's evidence was sufficient to connect the defendant with the remainder of the cocaine in the house "in such a manner and to such an extent that reasonable inferences could be drawn that [she] had knowledge of the cocaine's existence and whereabouts, that she had potential control over it, and that she had the necessary intent to exercise dominion over it." Finch v. State, 553 So.2d at 688.
 II
The defendant claims that the trial court erred by denying her motion for mistrial when the informant, Debbie Erwood, who had been served with a defense subpoena, failed to appear at trial.
" 'The entry of a mistrial is not lightly to be undertaken. . . . [T]he entry should be only a last resort, as in cases ofotherwise ineradicable prejudice.' " Leverett v. State,462 So.2d 972, 978 (Ala.Cr.App. 1984). Here, any prejudice to the defendant from Ms. Erwood's absence was cured by the stipulation of the parties, without further objection from the defense, that "[i]f Debra Erwood were here to testify to the facts as they took place, she would testify that she was in that house at 2:15 p.m., on July 1, 1987, and that the Defendant, Christine Beggs, was not present at 2:15 p.m. on July 1, 1987."
Rulings on motions for mistrial are within the discretion of the trial judge and will not be reversed on appeal in the absence of abuse. Ex parte Jefferson, 473 So.2d 1110, 1114
(Ala. 1985), cert. denied, 479 U.S. 922, 107 S.Ct. 328,93 L.Ed.2d 300 (1986). We find no abuse of discretion here.
 III
Finally, the defendant contends that the officers executing the search warrant did not comply with the "knock and announce" statute, see Ala. Code 1975 § 15-5-9, before kicking in the door to the residence. This contention, however, was never presented to the trial court and is, therefore, not preserved for appellate review. *Page 381 
Moreover, had the matter been raised, the trial court would have been warranted in upholding the search.
The officers testified that as they approached the residence, they heard occupants inside the house "moving around," and they stated that they announced their presence as they kicked in the doors. Although a verbal or affirmative refusal from the occupants of a dwelling is not required before officers may make a forced entry to execute a warrant, Laffitte v. State,370 So.2d 1108 (Ala.Cr.App.), cert. denied, 370 So.2d 1111
(Ala. 1979), there must be either (a) "some positive conduct on the part of the occupants indicating that they [are] not going to open the door" from which the officers may "assum[e] that they [have] been denied admittance," Annot., 70 A.L.R.3d 217, 224 (1976) (quoted with approval in Laffitte v. State, 370 So.2d at 1110), or (b) a "fail[ure] to respond within a reasonable time, [from which] refusal can be presumed," Irwinv. State, 415 So.2d 1181, 1183 (Ala.Cr.App.), cert. denied,459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982).
Here, there was "positive conduct" by the occupants of the house from which the officers could conclude that those present either were not going to open the door or were destroying evidence. Compare Shaneyfelt v. State, 494 So.2d 804, 807
(Ala.Cr.App. 1986) (occupants were "moving around" and saying "Police, police"); Conner v. State, 382 So.2d 601, 603
(Ala.Cr.App. 1979), cert. denied, 382 So.2d 605 (Ala. 1980) ("scurry[ing]"); Laffitte v. State, 370 So.2d at 1109-10 (running); Daniels v. State, 391 So.2d 1021, 1024 (Ala. 1980) ("movement").
The defendant received a fair trial. Her conviction is due to be affirmed.
AFFIRMED.
All Judges concur.