TYSON, Judge.
Leroy Williams, the appellant, was indicted on a three-count indictment for the following crimes: (1) Count I — unlawful possession of a controlled substance, in violation of § 20-2-70, Code of Alabama 1975 (repealed); (2) Count II — unlawful possession of drug paraphernalia, in violation of § 20-2-75, Code of Alabama 1975 (repealed); and (3) Count III — unlawful possession of an illegally manufactured alcoholic beverage, in violation of § 28-1-1, Code of Alabama 1975. By motion of the State, counts II and III were dismissed. The appellant pleaded not guilty to Count I and was tried by jury on April 17, 1989. The jury found the appellant “guilty as charged in the indictment,” and the trial judge sentenced the appellant to 15 years’ imprisonment.
On December 2, 1986, a team of law enforcement officers from federal, state, and local agencies gathered in Perry County, Alabama. The purpose of the meeting was to buy four kilos of cocaine from Johnny James Williams,[1] the uncle of this appellant.
Gerard Herring and Jerry Conner, narcotics agents with the Alabama Bureau of Investigation (ABI), were the principal actors. Herring and Conner checked into the Marion Motel, room 122, in Marion, Alabama. Other officers were stationed in room 124, the adjoining room.
After checking into their room, Herring and Conner proceeded to Williams’s trailer, which was located in Uniontown, Alabama. Howard Gray, an investigator with the district attorney’s office, and Mike Kirk, a member of the Drug Enforcement Agency (DEA) Task Force, trailed Herring and Conner. Gray and Kirk’s task was to attempt to maintain surveillance of the contact between Williams and Conner and Herring.
Upon arriving at Williams’s trailer, Conner went to the door and knocked, but no one came to the door. After a few minutes, the appellant drove up in a 1963 Chevrolet. Herring testified that the appellant stated that he had been watching for them. According to Herring, the appellant told Conner to wait there and he would go and get Williams.
The appellant testified, however, that he saw two men in Williams’s' yard. He said he stopped to ask them if they were look *284 ing for Williams and that when they said that they were, he said that he would get Williams for them.
A short time later, Williams appeared. He and Conner agreed to meet in room 122 at the Marion Motel and consummate the deal.
Gray and Kirk, who were unable to keep Conner and Herring in their sight without being discovered, returned to Uniontown, where they waited and watched for Conner and Herring. After a short while, Conner and Herring passed them. Gray and Kirk then headed back to Marion. In route to Marion, they passed the 1963 Chevrolet. Both Gray and Kirk testified that the car was occupied by two black males. Neither officer could state, however, if the appellant was in the car at that time.
Gray and Kirk returned to Marion and set up surveillance across the street from the Marion Motel. While there, they spotted the 1963 Chevrolet pull into the parking lot. One of the men in the car got out and went into the lobby area. After a few minutes, he came back out, and the car moved around behind the motel.
In the meantime, Conner and Herring returned to room 122. A few minutes after the word was given that the car had arrived, Williams knocked on the door of room 122. He entered the room carrying a red “tote bag.” He told Conner and Herring that he did not have the drugs with him, but he wanted to see the money. Herring went out to his car and retrieved the money. He brought it back to the room, where Williams counted it.
Williams then went to the telephone. He asked how to dial room 105. Conner instructed him that no one else was to enter the room but him.
Williams left the room and returned in about five minutes. With him, he had a second tote bag. Conner took the bag and found four wrapped packages of a white powdery substance enclosed therein. He tested the contents of two of the bags and found it to be cocaine. Herring then gave Williams the briefcase containing $120,000 in cash. As Williams turned to leave, Conner and Herring apprehended him and placed him under arrest.
Herring, along with several other officers, proceeded to room 105. When Herring knocked on the door, the appellant opened it. Herring placed the appellant under arrest. Herring searched the appellant and found a set of plastic scales in his pants pocket. Also, in the room, the officers found a red tote bag filled with wadded up newspapers. Herring testified that this bag appeared to be the one which was brought to room 122 during Williams’s first visit.
Chief John Anderson of the Marion Police Department and Kirk went to the 1963 Chevrolet and searched the passenger compartment of the car. Under the driver’s seat, Anderson found a vinyl zipper bag containing various drug paraphernalia.
The four kilos of cocaine, the plastic scales, and the bag containing the drug paraphernalia were transported to the DEA Task Force office in Mobile, Alabama. From there, they were heat sealed by Kirk and mailed to the DEA laboratory in Dallas, Texas.
George Lester, a forensic analytical chemist with the DEA, tested the contents of the four kilos. He determined each to contain approximately 1,000 grams of cocaine, with a 90 + % purity ratio. He also tested the white powdery residue contained on the scales and the drug paraphernalia. He determined this residue to be cocaine also. Among the items in the vinyl bag,' Lester found “three glass tubes, one plastic tube, one pair of scissors and three plastic bags,” (R. 259), and a plastic bag of inositol, a substance commonly used to dilute cocaine.
I
The appellant first contends that there were breaks in the chain of custody of the key pieces of evidence which were admitted at his trial. As a result, he argues, the evidence should not have been admitted, and, since it was improperly admitted, his conviction is due to be reversed.
*285 The State presented the following physical evidence at trial: (1) the scales taken from the appellant’s person following his arrest; (2) a vinyl zipper bag containing drug paraphernalia taken from the car driven by the appellant; and (3) four photographs of the four kilos of cocaine which were purchased from Williams. Traces (or a residue) of cocaine were found on items one and two.
A
The testimony at trial revealed that Herring arrested this appellant. The plastic scales (item 1 above) were removed from the appellant’s right front pants pocket, incident to a search of his person following the arrest. See Mathews v. State, 534 So.2d 1129 (Ala.Cr.App.), cert. denied (Ala.1988). Herring testified that he turned the scales over to Kirk, who was the case agent on this particular operation.
As for the zipper bag taken from the car (item 2 above), Chief Anderson testified that he removed it from underneath the driver’s seat. Upon seeing that the bag contained drug paraphernalia, he said, he handed the bag and its contents to Kirk.
The confusion as to these two pieces of evidence arises from a report which was prepared by Kirk a few days after the arrests. The report indicates that Sergeant J. D. Hobbie with the ABI removed the scales from this appellant and that Kirk himself removed the zipper bag from the car. Kirk testified that the report was incorrect. Instead, he confirmed that Herring discovered the scales and that Chief Anderson, who Kirk was standing by at the time, discovered the zipper bag.
The discrepancies in the testimony regarding these two items do not bar their admission; rather, the inconsistencies affect the weight to be afforded these items by the jury. Lott v. State, 456 So.2d 857, 861 (Ala.Cr.App.1984); Slaughter v. State, 411 So.2d 819 (Ala.Cr.App.1981), cert. denied (Ala.1982).
Moreover, Kirk testified that these two pieces of evidence were the same items that he sealed in bags in Mobile, Alabama, and mailed to the DEA laboratory in Dallas, Texas. This testimony satisfies the requirements necessary to overcome a challenge to the chain of custody. See Kennard v. State, 531 So.2d 938, 939 (Ala.Cr.App.1988).
B
As for the four kilos of cocaine, Kirk testified, on voir dire examination by defense counsel, that he took charge of the drugs at the scene of the crime. After-wards, he said, he turned the cocaine over to Gary Carter, the resident agent of the DEA office in Mobile, Alabama. Carter took the drugs, the cash, and the two suspects and flew to Mobile. Kirk later met Carter in Mobile, where Carter returned the cocaine to him.
He held the drugs in Mobile for a short while. He later shipped the drugs to the DEA laboratory in Dallas, Texas, where they were analyzed and ultimately destroyed.
It is the admission of the four photographs which the appellant argues was error. He claims that, since Carter did not testify, a serious break existed in the chain of custody of the drugs. Thus, he avers, admission of the photographs prejudiced him at trial.
Regarding the admissibility of photographs and films, this court stated in Molina v. State, 533 So.2d 701, 711 (Ala.Cr.App.), cert. denied, (Ala.1988), cert. denied, — U.S. -, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989):
“ ‘As long as satisfactory evidence of the integrity of a film or videotape is presented, stringent foundational requirements, such as proof of a continuous chain of custody, are now almost universally rejected as unnecessary....’ C. Scott, 3 Photographic Evidence. § 1297 at 95 (2d ed. 1969) (1987 Pocket Part). See also State v. Young, 303 A.2d 113 (Me.1973) (chain of custody proved in the absence of eyewitness verification); State v. Bunting, 187 N.J. Super. 506, 455 A.2d 531 (N.J.Super.Ct.1983) (same).”
*286 See Gordon v. State, 552 So.2d 901 (Ala.Cr.App.1989).
Kirk testified that he photographed the four kilos in Mobile, Alabama. He stated, during voir dire examination, that the four photographs were of the four kilos of cocaine which were purchased from Williams on December 2, 1986. His testimony was further supported by Lester, who stated that he recognized the four photographs as being the four kilos of cocaine at issue, because of the individualized markings on the bags.
We thus hold that any questions as to the chain of custody of the evidence went to its credibility and not its admissibility. Furthermore, admission of the four photographs was not error, since there was sufficient evidence offered that the photographs represented the four kilos of cocaine which were purchased from Williams.
II
The appellant next contends that the trial court lacked jurisdiction over him, and, thus, that his conviction cannot stand. Specifically, the appellant argues that count I of the indictment charged him with the unlawful possession of a controlled substance, in violation of § 20-2-70, Code of Alabama 1975 (repealed). The appellant claims that, since this statutory section was repealed effective October 21, 1987, the indictment was faulty, requiring either reindictment or dismissal of the charge against him.
The crime for which this appellant was convicted was committed on December 2, 1986. Therefore, § 20-2-70, which was the statute in effect at the time of the offense, is the applicable penal statute in this case. Ex parte Jefferson, 473 So.2d 1110, 1111, n. 1 (Ala.1985), cert. denied, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300 (1986). See also Howard v. Burton, 470 So.2d 1176, 1176-77 (Ala.1985) (repealed statute in a civil case was applied at time of act, not time of trial); Jones v. Jones, 423 So.2d 205, 207 (Ala.1982) (same).
The indictment under which this appellant was tried was valid. Thus, the Perry County Circuit Court acted within its jurisdiction in convicting and sentencing him.
III
After going to room 105 of the Marion Motel and placing this appellant under arrest, Gerard Herring proceeded to the motel office. There, he reviewed the motel’s registration cards and observed that room 105 was registered to the appellant.
Over the appellant’s objections, Herring testified that room 105 was registered to the appellant. The appellant argued in support of his objection that the motel registration card was the best evidence and that allowing Herring to testify to the contents of the card constituted hearsay.
We hold that any error caused by Herring’s testimony was harmless. A.R.A.P. 45. Herring, along with other witnesses, testified that the appellant came to the door to room 105 when Herring knocked on it. No one else was in the room at the time. The appellant was immediately placed under arrest in room 105.
Furthermore, the appellant never denied that room 105 was registered to him. In fact, he testified that he put the room in his name and that he planned to use the room to meet two women there.
The appellant has wholly failed to show that his “substantial rights” were “probably injuriously affected.” Therefore, a reversal is not warranted for this alleged error.
IV
The appellant, last, contends, on numerous grounds, that a violation of due process and equal protection of law occurred. Most of those grounds have been addressed hereinabove.
The appellant, however, has failed to cite any legal authority in support of the varied menu of issues that he raises. Therefore, these issues are deemed waived. A.R.A.P. 28(a)(5) (1975); Vinzant v. State, 462 So.2d 1037 (Ala.Cr.App.1984).
*287 For the reasons stated, the decision of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, J., concurs in result only.

. To avoid confusion, Johnny James Williams will be referred to as "Williams” throughout this opinion. The appellant, whose last name is also Williams, will be referred to as "appellant.”