The appellant was indicted for possession of cocaine, in violation of § 13A-12-212, Code of Alabama, 1975. A jury found the appellant guilty as charged. The appellant was sentenced to 10 years' imprisonment, was fined $5,000, and was assessed $10,000 for the victims' compensation fund.
David Sedberry, an investigator with the Huntsville Police Department, testified that on November 9, 1990, he and other officers executed a search warrant at Sam Alexander's house. The appellant was living with Alexander at the time. The search warrant was based upon information from a confidential informant who had purchased cocaine from Alexander in controlled drug buys. Officer Sedberry testified that, in executing the warrant, the police used a "ram" to break down the door of the house when no one answered the door. When they entered the house, the appellant was standing approximately four or five feet *Page 179 
from the stove in the kitchen, and he attempted to move to the den. Officer Sedberry and Officer William Payne stated that on the stove was a metal pan that contained a baby food jar with a white substance inside. It appeared to the officers that powder cocaine was being transformed into rock cocaine or "crack". During the search of the house, the officers seized six bags of cocaine and $945 in United States currency taken from the person of the appellant. Both the appellant and Alexander were arrested.
This appeal follows.
 I
The appellant contends that the evidence was not sufficient to sustain his conviction for possession of cocaine. Specifically, he claims there is no proof in the record pointing to his guilt other than his presence in Alexander's residence at the time of the execution of the search warrant. The appellant argues that the State failed to prove constructive possession in that, he says, there was no proof that he knew there were drugs in the house, and that without knowledge of the presence of the drugs, he could not possess dominion and control over the cocaine.
As this court stated in Beggs v. State, 568 So.2d 377
(Ala.Cr.App. 1990):
 "[W]here a person is in possession, but not exclusive possession of premises, it may not be inferred that he knew of the presence of any controlled substance found there unless there are other circumstances tending to 'buttress this inference.' Temple v. State, 366 So.2d 740, 743
(Ala.Cr.App. 1978). See also Ex parte Wells, 527 So.2d 762, 763-64 (Ala. 1988). '[M]ere presence at the scene of a crime, without more, [does not make] an accused a party to the crime. . . . But when the presence of the accused at the scene is established and evidence of his knowledge of the presence of the prohibited substance is shown, along with any other incriminating evidence, the issue of the defendant's guilt should be submitted to the jury.' Radke v. State, 292 Ala. 290, 292, 293 So.2d 314, 316 (1974). In addition to presence, there must be 'incriminating evidence which indicates an interest in or that [the accused] is aiding or abetting the possession.' Hudson v. State, 249 Ala. 372, 372-73, 31 So.2d 774, 775 (1947)."
Beggs, 568 So.2d at 379.
Here the appellant's knowledge of the presence of cocaine can be inferred from the fact that when the search was conducted the appellant was in the kitchen, where it appeared that the cocaine was being converted to crack. The appellant was also present in the house when buys were made from Alexander, and the appellant had in his possession money, which included two specific $20 bills used by the officers to make the controlled drug buys.
Although the defendant argues that he was merely a guest in the house while he and his wife were estranged and that he had no participation in the illicit activity occurring on the premises, the jury was entitled to infer otherwise from the defendant's presence at the time of the search of the premises, the amount of cocaine located throughout the house, and his opportunity to observe drug transactions in the house.
Beggs also stated:
 " ' "[T]he voluntary presence of the accused in an area obviously devoted to preparation of drugs for distribution is a circumstance potently indicative of his involvement in the operation." [United States v.] Staten, 581 F.2d [878, 885 n. 67 (U.S.App.D.C. 1978)] citing United States v. Davis, 183 U.S.App.D.C. 162, 562 F.2d 681 (1977).' German v. State, 429 So.2d 1138, 1142 (Ala.Cr.App. 1982)."
Beggs, 568 So.2d 377, 380. See also Finch v. State,553 So.2d 685 (Ala.Cr.App. 1989) (evidence that accused, who had no contraband on her person but who was found in a "crack house" with cocaine lying 18 inches from her, sufficient to convict of possession of the cocaine nearest her).
We hold that the State's evidence was sufficient to connect the defendant with the cocaine in the house so that reasonable inferences could be drawn that he had knowledge of the cocaine's existence, that he had control over it, and that he had the *Page 180 
necessary intent to exercise dominion over it.
 II
The appellant contends on appeal that he is entitled to know the name of the confidential informant because the informant placed him at the house when the informant made drug buys from the appellant's roommate, Alexander. The appellant argues that the confidential informant was a material witness as to the issue of his guilt or innocence. This court in Malone v. State,452 So.2d 1386 (Ala.Cr.App. 1984), held that:
 "The general rule is that the prosecution is privileged to withhold from the accused disclosure of the identity of an informant, unless it is essential to the defense set up by the accused and necessary to show their innocence. Hood v. State, 47 Ala. App. 192, 252 So.2d 117 (1971); Davenport v. State, 50 Ala. App. 321, 278 So.2d 769 (1973); Hatton v. State, 359 So.2d 822
(Ala.Crim.App. 1977); Murphy v. State, 367 So.2d 584
(Ala.Crim.App.), cert. denied, 367 So.2d 587
(Ala. 1978); Thornton v. State, 390 So.2d 1093
(Ala.Crim.App.), cert. denied, 390 So.2d 1098
(Ala. 1980), cert. denied, 450 U.S. 998, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981). In such a case, the burden is on the accused to show why disclosure of the informant's identity was necessary to show her innocence. Hatton v. State, supra; Thornton v. State, supra. Furthermore, 'mere supposition or conjecture about the possible relevancy of the informant's testimony is insufficient to warrant disclosure.' U.S. v. Hare, 589 F.2d 242 (5th Cir. 1979); Gambrel v. State, 405 So.2d 954
(Ala.Crim.App.), cert. denied, 405 So.2d 957
(Ala. 1981)."
Malone, 452 So.2d at 1390.
Here, the confidential informant was not an active participant with the appellant in the possession of cocaine found in the house. The confidential informant merely supplied police officers with the information that the appellant was present in the house when controlled drug buys were made from Alexander. The informant was not present during the search of the house when the cocaine was found and the arrests were made. Because the informant did not participate in the transaction for which the appellant is charged and because the appellant failed to demonstrate a need to know the name of the informant to establish his innocence, the trial court properly sustained the State's objection to the appellant's request for the informant's name. Lightfoot v. State, 531 So.2d 57
(Ala.Cr.App. 1988).
 III
The appellant contends that the trial court erred in denying his motion for a new trial on the basis that he was denied his constitutional right to have a witness testify on his behalf. Specifically, the appellant contends that the trial court erred in not allowing him to examine Alexander after he pleaded the Fifth Amendment in answer to the question: "Sam, were those your drugs found in your residence on the night of November 8th?"
In this case, the appellant and Alexander were arrested at Alexander's house during the execution of the search warrant. Defense counsel was representing both the appellant and Alexander on the charges. During the appellant's trial, defense counsel put Alexander on the stand. Defense counsel asked Alexander if the drugs in the house that night were his. The State objected, arguing that this question, if answered, would incriminate Alexander in his case. The trial court ascertained that defense counsel also represented Alexander. Defense counsel informed the court that Alexander was not going to incriminate himself and that he was going to assert his Fifth Amendment right against self-incrimination. The record reflects that the following occurred outside the presence and hearing of the jury:
 "THE COURT: You don't expect him to incriminate himself?
"MR. BUTLER [DEFENSE COUNSEL]: No, sir.
 "THE COURT: So he is going to deny that these are his drugs? *Page 181 
 "MR. BUTLER [DEFENSE COUNSEL]: No, sir, I expect him to plead the Fifth Amendment. I think that is a material fact on the possession of these drugs.
 "THE COURT: You are his lawyer and you are putting him on and asking him a question and you have instructed him to plead the Fifth Amendment?
 "MR. BUTLER [DEFENSE COUNSEL]: Yes, sir. I think it is a material question.
 "MR. TAYLOR [PROSECUTOR]: That is no evidence for this jury to hear, Your Honor.
 "THE COURT: I am going to sustain the objection, Mr. Butler. I have never heard of anything like this before in my life."
(R. 139-140.)
Moreover, the court went on to state that defense counsel was putting on the witness in the hopes that the jury would draw an inference of Alexander's guilt because he asserted his Fifth Amendment right, thereby hoping that the jury would find the appellant innocent. Clearly, the trial court acted within its discretion in disallowing Alexander's testimony. Here, the appellant was not deprived of any witness on his behalf because this witness was going to assert his Fifth Amendment right against self-incrimination, and defense counsel knew this. "The trial court may, ex mero motu, exclude improper evidence at any stage of the trial." Chillous v. State, 405 So.2d 58, 62
(Ala.Cr.App. 1981).
Furthermore, as stated by this court in Hurst v. State,397 So.2d 203 (Ala.Cr.App. 1981), cert. denied, Ex parte Hurst,397 So.2d 208 (Ala. 1981):
 "It is the court's duty to confine the evidence to the points in issue in order that the attention of the jury may not be distracted, or that their minds may not be withdrawn from the main issue and directed to matters which are foreign or of questionable or doubtful relevancy. Gulley v. State, 342 So.2d 1362, 1365 (Ala.Cr.App. 1977)."
Hurst, 397 So.2d at 207.
The tactic of defense counsel was to in effect have the jury draw an inference of guilt from Alexander's exercise of the right against self-incrimination. Alexander's testimony was properly excluded in that it "would have had no bearing on the case" nor would it have "enlightened the jury as to any material aspect in the case." Hurst, 397 So.2d at 207. The trial court's exclusion of this witness's testimony was, therefore, proper.
Moreover, this court in Thomas v. State, 473 So.2d 627
(Ala.Cr.App. 1985), stated the general rule when the prosecution calls an accomplice or another witness to testify for the State, knowing the witness will invoke the Fifth Amendment.
 " 'It is error for the prosecution to call an accomplice or another witness to testify for the state if he knows the witness will invoke the Fifth Amendment.' N. Chiarkas, Alabama Criminal Trial Practice 219 (1981). See Busby v. State, 412 So.2d 837 (Ala.Cr.App. 1982); Shockley v. State, 335 So.2d 659 (Ala.Cr.App. 1975), affirmed, 335 So.2d 663 (Ala. 1976); Allison v. State, 331 So.2d 748
(Ala.Cr.App.), cert. denied, 331 So.2d 751
(Ala. 1976).
 "The general rule is stated in Annot., 19 A.L.R.4th 368, 373 (1983):
 " '[I]t is improper for the prosecution to call as a witness one whom it knows will certainly invoke the privilege against testifying on the ground of self-incrimination, with the sole purpose or design of having the jury observe that invocation. Obviously, it is difficult to demonstrate that the prosecution had this sole purpose or design, and it would be necessary, in any event, to demonstrate prejudice to the accused in order to effect the reversal of a conviction.' "
Thomas, 473 So.2d 627, 629-30.
In Thomas, this court held that the defendant's right to a fair trial was not prejudiced after the State called the convicted codefendant as a rebuttal witness to testify against the defendant when there was no evidence that the State called the co-defendant with the purpose of having the jury observe him invoke his right against self-incrimination. Furthermore, the State presented a strong case against the defendant, *Page 182 
and the co-defendant was not extensively examined after the invocation of his right.
In the instant case the trial judge properly excluded Alexander's testimony when the trial judge knew defense counsel's purpose was to have the jury observe Alexander invoke his right against self-incrimination.
 IV
The appellant contends that error occurred when the police officers referred to $40 of the money taken from the appellant during the arrest as "buy money." Specifically, the appellant argues that the State's use of the words "buy money" suggested his involvement in illegal drug activity. This claim is without legal merit. Officer Sedberry testified that 2 of 20 bills taken from the appellant were in fact money used during a previous controlled drug buy. Officer Sedberry testified that the serial numbers on the money verified that it was money used during a controlled drug buy. This evidence was relevant and proper in determining whether the appellant knew whether there was cocaine in the house.
The test of relevancy applied in Alabama is whether the offered evidence bears any logical relationship to the ultimate inference for which it is offered. C. Gamble, McElroy's AlabamaEvidence § 21.01 (4th ed. 1991). The inference for which the evidence is offered must be material to an issue in the case.Ex parte Killough, 438 So.2d 333, 335 (Ala. 1983). Here, the evidence of money from a controlled drug buy found on the appellant was relevant, and it was proper for the jury to consider it in determining whether the appellant knew that the cocaine was in the house. We find no error in allowing the officer to testify concerning the "buy money" found on the appellant.
 V
The appellant next contends that the sentence imposed was "unduly harsh and excessive." He was sentenced to 10 years' imprisonment, was fined $5,000 and was assessed $10,000 to the crime victims' compensation fund.
Unlawful possession of cocaine is a Class C felony. §13A-12-212, Code of Alabama 1975. The penalty that may be imposed for a Class C felony is not less than 1 year and 1 day or more than 10 years. § 13A-5-6 Code of Alabama 1975. The appellant's sentence was within the statutory limits and thus this court will not review the sentence. Porter v. State,520 So.2d 235 (Ala.Cr.App. 1987); Lyle v. State, 497 So.2d 834
(Ala.Cr.App. 1986).
Also, the appellant argues that the fine of $5,000 and the victims' compensation assessment of $10,000 were excessive. The $5,000 fine and the $10,000 assessment are authorized under the provisions of § 13A-5-11 and § 15-23-17(b), Code of Alabama 1975, respectively.
Section 13A-5-11(a)(3) provides, in pertinent part:
 "A sentence to pay a fine for a felony shall be for a definite amount, fixed by the court, within the following limitations:
". . . .
 " '(3) For a Class C felony, not more than $5,000.00. . . ."
Section 15-23-17(b) provides, in pertinent part:
 "In addition to the imposition of any other costs, penalties or fines imposed pursuant to law, any person convicted or pleading guilty to a felony shall be ordered to pay a victim compensation assessment of not less than $25.00, nor more than $10,000.00, for each such felony for which such person was convicted."
Both the fine and the assessment imposed upon the appellant were within the statutory limits. Therefore, we hold that the total amount imposed does not constitute an "excessive fine." See Ex parte Lewis, 556 So.2d 370 (Ala. 1989).
For the above-stated reasons the judgment is due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 183