The appellant, Leo Harrell, received a five-year sentence for conspiracy to commit a controlled substance crime, in violation of §§ 13A-4-3 and 13A-12-212, Code of Alabama 1975. The appellant also received a 15-year sentence for conspiracy to commit robbery in the first degree, in violation of §§13A-4-3 and 13A-8-41, Code of Alabama 1975. The appellant raises several issues on appeal.
 I
The appellant first contends that the trial court erred in denying his motion for a mistrial when the prosecution, in its closing argument, commented on the appellant's incarceration. We disagree.
Upon the State's comment concerning the appellant's current incarceration, appellant's counsel promptly objected on the grounds that no evidence of his incarceration had been introduced into evidence and that the comment was highly prejudicial. The trial court sustained counsel's objection and instructed the jury to disregard the comments of the prosecutor. *Page 436 
The appellant argues that the prosecutor's comment improperly implied the appellant's guilt to the jury and thus, that a mistrial should have been granted. However, the record indicates that a motion for a mistrial on this ground was never made. After the trial judge sustained counsel's objection, counsel for the appellant stated to the judge that "we would like to have a motion to be heard at the appropriate time," but no subsequent motion was made.
Because no motion for a mistrial was made at trial, the objection to the prosecution's closing comment was sustained by the court, and the jury was promptly instructed to disregard the objectionable comments, this court has not been presented with an issue to consider on appeal. Only matters that are timely raised at trial and as to which the appellant receives on adverse ruling are preserved for appellate review. Storyv. State, 588 So.2d 948 (Ala.Crim.App. 1991). Even had the appellant preserved this issue for appellate review, the grant or denial of a motion for mistrial lies within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Morton v. State, 581 So.2d 562
(Ala.Crim.App. 1991).
 II
The appellant next contends that the trial court erred in denying a motion for a mistrial on the ground that the appellant was prejudiced by an answer to the prosecutor's line of questioning indicating that one of the appellant's codefendants was incarcerated. We disagree.
After the witness, undercover police officer Ward Hairelson, answered that one of the appellant's codefendants was currently in jail, counsel for the appellant objected as to the relevancy of the answer and claimed severe prejudice as grounds for a mistrial. The trial judge then sustained the objection and in a curative measure promptly charged the jury to disregard the question and the response. However, the judge denied the motion for a mistrial.
It is a well-decided rule of this court that the granting of a mistrial is an extreme measure and should be taken only when it is manifestly necessary or when the ends of justice would otherwise be defeated. Hagood v. State, 588 So.2d 526
(Ala.Crim.App. 1991), cert. denied, Martin v.Alabama, ___ U.S. ___, 112 S.Ct. 1943, 118 L.Ed.2d 548
(1992). Moreover, "the trial judge is allowed broad discretion in determining whether a mistrial should be declared because he is in the best position to observe the scenario, to determine its effect upon the jury, and to determine whether a mistrial should be granted." Garrett v. State, 580 So.2d 58
(Ala.Crim.App. 1991).
The trial court's prompt decision in charging the jury to disregard the prosecutor's questions concerning the whereabouts of the codefendant and the answer clearly indicates no abuse of discretion, because the court's prompt actions cured any prejudice that might have resulted. A mistrial is a last resort to be used when no other curative measures by the court can cure the problem. Beggs v. State, 568 So.2d 377
(Ala.Crim.App. 1990).
 III
The appellant next contends that the State's submitting to the trial court a trial memorandum containing statements of law and certain facts in support of its position that specific evidence was admissible was an "ex parte" communication by the State and that, therefore, the appellant's motion for mistrial should have been granted.
An "ex parte communication is a communication about a case which an adversary makes to a decision maker without notice to the affected party." D'Acquisto v. Washington,640 F. Supp. 594, 621 (N.D.Ill. 1986). The memorandum in dispute was never read to or submitted to the jury. Moreover, the court noted that even though it had read the facts in the memorandum, it would take such facts as a proffer of what the State intended to show at trial. The court also stated that it was not the trier of fact and that the memorandum would have *Page 437 
no effect on the court other than as a research tool.
Furthermore, the fact that the trial judge received the trial memorandum at the same instant it was presented at trial and was served upon the appellant's attorney negates its being an "ex parte communication." As we stated earlier, a motion for a mistrial implies a miscarriage of justice and is such a serious matter that it should be granted only when there is a fundamental error in the trial that would vitiate the result.Thompson v. State, 527 So.2d 777 (Ala.Crim.App. 1988).
 IV
The appellant next contends that the State had two specific problems with the chain of custody of certain evidence presented at trial. Specifically, the appellant argues that the improper chain made certain evidence necessary for the State to sustain its burden of proof inadmissible.
The appellant first argues that undercover police officer Ward Hairelson's inability to testify as to which police officer on the scene confiscated the specific weapons used as State's exhibits three through seven indicates a break in the chain in the custody of the evidence at the beginning and therefore that evidence should have been suppressed. Officer Hairelson testified that, although the initial discovery and touching of the weapons was completed by other officers and not himself, he physically saw every weapon and testified as to its location on the truck, even though he was not in the position to reach over in the truck and pull the weapons out himself.
The establishment of a chain of custody is necessary to show a reasonable probability that the evidence has not been tampered with or altered. Smith v. State,583 So.2d 990 (Ala.Crim.App. 1991), cert. denied,583 So.2d 993 (Ala. 1991). Moreover, the evidence need not negate the most remote possibility of substitution, alteration, or tampering, but rather must prove to a reasonable probability that the item is the same as it existed at the beginning of the chain. Ex parte Williams, 548 So.2d 518 (Ala. 1989). Where a "weak link" in the chain of custody is found, weight and credit afforded the evidence, rather than its admissibility, are questioned; however, where a break or "missing link" in the chain of custody is shown, admissibility of the evidence is questioned. Morgan v. State,570 So.2d 859 (Ala.Crim.App. 1990).
The lack of testimony as to which specific officer confiscated those weapons constituting State's exhibits three through seven goes to the weight and not to the admissibility of the evidence, especially in this case, where an officer testified that he saw every weapon in the vehicle upon its being confiscated. A gun is properly admitted into evidence when it is identified at trial as the weapon used in the commission of the offense. Ex parte Jones,592 So.2d 210 (Ala. 1991). Ex parte Holton, 590 So.2d 918 (Ala. 1991). Moreover, discrepancies in testimony regarding which officer seized certain items did not bar the admission of these items on the theory that there was no showing of a chain of custody; the inconsistencies affected the weight to be afforded the items by the jury. Williams v. State,565 So.2d 282 (Ala.Crim.App. 1990).
The appellant argues that the chain of custody of a tape recording was broken when DeAnne Porter, a court reporter from a previous trial who had custody of the tape entered as an exhibit, failed to testify as to the custodial chain of that exhibit. Furthermore, the appellant contends that the chain of custody was also broken because Parker had written a receipt, exhibit 20, that stated that all evidence had been transferred to Dan Snider, but that receipt failed to individually list the evidence and Snider never testified as to the identity or custody of the transferred evidence.
This court addressed the rule for admissibility of audio and videotapes in Molina v. State, 533 So.2d 701, 712
(Ala.Crim.App. 1988), cert. denied, 489 U.S. 1086,109 S.Ct. 1547, 103 L.Ed.2d 851 (1989). In Molina, this court stated that audiotapes are admissible when a witness testifies that they are reliable representations of the subject *Page 438 
sound. Moreover, that proper foundation laid for the accuracy of what the tape portrays makes the need to establish a chain of custody to demonstrate its authenticity unnecessary.
Officer Richardson's testimony clearly indicates that the tape was a reliable representation of the subject sound. Richardson testified that the tape in question was used to record the conversation he had had with the appellant's coconspirators and that the tape clearly depicted the conversations that he had had with those persons whose names appeared on the tape. Furthermore, he testified that he recognized the voices on the tape and he identified the individuals whose voices appeared on the tape.
 V
The appellant next contends that the court erred in denying his request to reveal the identity of the confidential informant who was present during the entire episode which lead to the appellant's arrest. The appellant specifically claims that the confidential informant was a material witness to the circumstances which led to the appellant's arrest and that the identification, presence, and testimony of the informant was essential to reveal possible exculpatory evidence and to impeach the damaging testimony of Officer Richardson.
Although the prosecution has the privilege to withhold the identification or production of persons who furnish information to law enforcement officers, the privilege is not absolute. "Where the disclosure of an informer's identification is relevant . . . and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Berry v. State, 581 So.2d 1269, 1273
(Ala.Crim.App. 1991), citing Roviaro v. UnitedStates, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639
(1957). Moreover, while the prosecution's privilege to withhold an informant's identification may be defeated, "the burden is on the defendant to demonstrate the need for the disclosure."United States v. Fixen, 780 F.2d 1434, 1439 (9th Cir. 1986), quoted in Lightfoot v. State, 531 So.2d 57, 59
(Ala.Crim.App. 1988).
At trial the appellant did not make any showing as to the informant's expected testimony, state how he thought the informant's testimony could help his case, or otherwise specifically demonstrate any "need for the disclosure," other than to reveal the "possible exculpatory evidence and to impeach any self-serving statements made by [Officer] Richardson. In fact, there exists the strong possibility that the State's confidential informant could actually hurt the appellant's case more than it could help it, because the informant witnessed the episode leading to appellant's arrest and could therefore possibly corroborate the testimony of Officer Richardson.
 VI
The appellant contends finally that the trial court erred in denying his motion for acquittal alleging that the State failed to meet its burden of proof in establishing that the appellant conspired to sell a controlled substance and conspired to commit robbery. We disagree.
The appellant first objects to the admissibility of a statement made by a coconspirator on the ground that the State failed to show corroborating evidence necessary to support the admissibility of the coconspirator's statements or acts. Specifically, the appellant argues that before any statement by the coconspirator/witness, there must be proof of a conspiracy.
As to the contention that the evidence given by the co-conspirator was premature, this court has ruled that although "proof of the conspiracy should be made before the admittance against the accused of the co-conspirator's act or statement, subsequent proof of the conspiracy cures anyerror in prematurely admitting the act or statement."Lundy v. State, 539 So.2d 324 (Ala.Crim.App. 1988), citing C. Gamble, McElroy's Alabama Evidence, § 195.03(2) (3d ed. 1977). (Emphasis supplied.)
In a related argument, the appellant contends that the corroboration of a felony cannot be had on the testimony of an accomplice *Page 439 
unless corroborated by other evidence that would link the appellant with the commission of the offense. Section12-21-222, Code of Alabama 1975, provides: "[A] conviction of a felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroboration, if it merely shows the commission of the offense thereof, is not sufficient."
In construing § 12-21-222, this court has ruled that the test for determining whether there was sufficient evidence to corroborate the testimony of an accomplice is not whether the other evidence, standing alone, would support the conviction. The test is whether, after eliminating the testimony of the accomplice, the remaining evidence is sufficient to connect the accused with the crime. Davidson v. State,491 So.2d 1040 (Ala.Crim.App. 1986).
The record clearly indicates that the testimony of officers Hairelson and Richardson sufficiently corroborated the charged offenses by showing that the appellant clearly participated in the commission of the offenses.
Undercover police officer Richardson testified that he received a call concerning the purchase of cocaine, and that a codefendant, Quinton Salter, entered the motel room Officer Richardson was using to get a sample of the drugs. Later, two other accomplices, James Lewis and Cedric Thomas, knocked at Richardson's door and asked for another sample. Soon after, several individuals appeared at the doorway of the Richardson's motel room. When Richardson asked coconspirator Lewis why all of the men were at his doorway, Lewis responded that he needed them for protection. At this time, the officer saw the appellant, who Lewis had referred to as one of the individuals protecting him, standing outside the motel room at the guard rail.
Richardson then testified that Lewis attempted to push the door open and at this time he saw the appellant reach in the front of his pants and pull out a semi-automatic weapon. Richardson backed away from the door and pulled his pistol out and pointed it at Lewis. Lewis then backed up and pushed the appellant out of the room. Officer Richardson locked the door and called to the other deputies to "take them down." He observed the appellant and the other men getting into a Nissan Pathfinder truck, at which point they were apprehended.
Officer Ward Hairelson testified that on the day of the episode that led to the appellant's arrest, he saw five men approach Officer Richardson's motel room. After he received Richardson's message to "take them down," Officer Hairelson testified that he and his other deputies surrounded the truck and subsequently arrested the individuals. He identified the appellant as one of the individuals arrested.
The statement of codefendant and accomplice James Lewis, which was made before Richardson and Hairelson testified, adds nothing to the record, and is thoroughly corroborated by the subsequent testimony of Officers Richardson and Hairelson. Thus, its premature use at trial was cured by the subsequent proof of the conspiracy, which showed the appellant as an active participant on the charged offenses.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.