Appellant-defendant was jointly indicted with Jide Irons for assault with intent to murder Clyde R. Goodwin, Sr., who was appellant's brother-in-law. Appellant was convicted as charged. The trial judge fixed punishment at eighteen years imprisonment. He was declared an indigent and is represented here by appointed and competent counsel.
The two defendants were tried separately pursuant to law. Irons was tried and convicted of assault with intent to murder Goodwin. This conviction was prior to the trial of appellant. An appeal was taken to this court and dismissed, on Iron's motion, after appellant's trial. So Irons' appeal was pending when appellant was tried. *Page 660 
A brief statement or summary of the evidence will be sufficient for the purpose of this opinion.
The evidence adduced by the State tends to show that appellant, with the aid of Jide Irons, the co-defendant, committed the offense charged.
Goodwin, the victim of the assault, testified that appellant importuned him to come to Florence, Alabama, and get some meat. Following this telephone conversation, he went to Florence.
After both had picked up some steaks, appellant promised to get Goodwin some hamburger patties. To that end, appellant told Goodwin to drive to Wildwood Park. Upon arrival, appellant got out of the car and talked with Jide Irons, who was waiting there. Appellant also told Goodwin that Irons would show him where the hamburger meat was. Appellant did not get back into the car.
Irons told the witness Goodwin to take a road that would lead to a dead-end. Upon arrival at the isolated area, Irons alighted and shot the witness five times.
Sometime prior to the shooting an insurance agent approached Goodwin about purchasing life insurance policies for a large amount. He signed an insurance application that designated appellant, his wife and their four children as beneficiaries. Later upon learning the amount of the premiums, Goodwin directed the agent to cancel the policies. The agent made no reply, but the policies were never delivered to Goodwin, nor did he pay any premiums therefor. It further appears from the evidence that although the victim never paid the premiums that appellant did.
Appellant-defendant testified and denied that he went with the victim to Wildwood Park. He admitted that he paid the premiums, but that he did so to keep the policies from lapsing. He did not admit financial difficulties at the time but on cross-examination he admitted some financial embarrassment. He admitted that he knew he was one of the beneficiaries of the policies.
During the course of the trial, Irons was called as a witness for the State; he took the fifth amendment and refused to testify. The witness' attorney, Mr. Evans, after some delay, arrived in court and along with the District Attorney and defendant's counsel, held a conference in camera with the court.
The record indicates that before the witness' attorney arrived the court held an in camera conference with the District Attorney and defendant's attorney, at which time the refusal of the witness, Irons, to testify was discussed and considered. The court overruled defendant's objection to the State interrogating the witness after Irons refused to testify. The court cited Willingham v. State, 50 Ala. App. 363,279 So.2d 534, cert. denied by the Supreme Court, 291 Ala. 803,279 So.2d 538, as his authority in overruling defendant's objection.
Shortly after the trial was resumed before the jury, Mr. Evans, counsel for the witness, appeared in court. Mr. Evans was given an opportunity to confer in camera with Irons, after which another hearing or conference took place outside the presence of the jury. Mr. Evans informed the court and the other involved attorneys that his client did not wish to testify in the case; that he informed his client if he did not wish to testify he would be glad to raise any objection and assert the fifth amendment under the Constitution of the United States and Article 1, § 6, of the Constitution of Alabama. The witness indicated to his attorney that was what he wanted to do. The court intimated that the witness might be subject to contempt of court for refusal. Mr. Evans stated that he had so advised his client.
The court then ruled that under Willingham, supra, the witness, by having taken the stand in own trial for the assault on Mr. Goodwin, had waived his constitutional right not to testify. The trial thereupon was resumed.
We do not think it necessary or advisable here to discuss the application vel non of our pronouncements in Willingham, supra; *Page 661 
to the asserted rights of the witness. The witness adamantly refused to testify and continued throughout his appearance on the stand to assert his right not to do so.
It appears to us that before resumption of trial after the court's ruling, the trial court and the District Attorney, who prosecuted for the State, were fully informed of the witness' refusal to testify, but notwithstanding such knowledge the court allowed the witness to be bombarded with approximately twenty-five questions, most of which sought to elicit information relating to witness' participation in the assault: They were calculated to fasten guilty conduct on defendant.
To each question, or approximately so, counsel for the witness objected, and so did defendant's counsel. The objections were overruled and the District Attorney proceeded with the examination. We will not burden this opinion with a delineation of each question. Suffice it to say, the questionings were calculated to elicit critical evidence against appellant-defendant.
However, even though the court instructed the jury several times that the questions were not to be considered as evidence against the defendant, the court permitted multiple questions to be pyramided over defendant's continuous objections thereto. We hold that the pyramiding was injurious to defendant and justifies a reversal of the judgment and remand of the cause.
In Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074,13 L.Ed.2d 934 (1965), it appears that petitioner, the defendant in Alabama, an alleged accomplice as here, was tried separately in the State court for assault with intent to murder. Another alleged accomplice was called as a State's witness in petitioner's (defendant's) trial, but repeatedly refused on self-incrimination grounds to testify. Under the guise of cross-examining the accomplice as a hostile witness, the prosecution, over defendant's objections and despite the accomplice's multiple refusals to answer (as here), read in the presence of the jury the latter's purported confession which implicated the petitioner. The confession was read in the form of questions to the witness. The jury convicted the petitioner.
Petitioner's inability, so the court said, to cross-examine the alleged accomplice about the purported confession and the reading of the confession, may well have been treated by the jury as substantial and cogent evidence of guilt, and denied him the right of cross-examination secured by the Confrontation Clause of the Sixth Amendment, which is made applicable to the states by the Fourteenth. Petitioner's objection adequately preserved his denial of a federal constitutional right regardless of its adequacy under State law. The Supreme Court of the United States reversed and remanded.
The United States Circuit Court of Appeals in Sanders v.U.S., 373 F.2d 735, 9 Cir., held that the refusal of a witness who claimed Fifth Amendment privilege, to answer certain questions, ". . . [A]dded critical weight to a prosecution's case in form not subject to cross-examination, and thus prejudiced appellant Sanders. These inferences affected his substantial rights."
In Fletcher v. U.S., 118 U.S.App.D.C. 137, 332 F.2d 724, the court held that proceedings wherein a witness was called by the prosecution and asked a series of questions as to his involvement with defendant in a robbery in question, followed by refusal of the witness to answer each of the questions on grounds that it might incriminate him, constituted prejudicial error.
For further discussions and treatments of the subject see:United States v. Coppola, 479 F.2d 1153, 10 Cir.; U.S. v.Compton, 365 F.2d 1, 6 Cir., cert. denied 385 U.S. 956,87 S.Ct. 391, 17 L.Ed.2d 303; Robbins v. Small, 371 F.2d 793, 1 Cir., 386 U.S. 1033, 87 S.Ct. 1483, 18 L.Ed.2d 594; People v.Myers, 35 Ill.2d 311, 220 N.E.2d 297, cert. denied385 U.S. 1019, 87 S.Ct. 752, 17 L.Ed.2d 557; State v. Dinsio,176 Ohio St. 460, 200 N.E.2d 467; State v. Nelson,72 Wn.2d 269, 432 P.2d 857. *Page 662 
In the latter case, (Nelson, supra,) the court observed:
 "Had there been a genuine doubt in the mind of the prosecutor that the witness, Patrick, would again claim his privilege as he contended he would, the wisest solution, it seems to us, was that suggested by appellant's attorney:
 "`If there is any doubt about what this man is going to testify to, I can ask the Court to call him in the absence of the jury and let the prosecutor ask him questions. This is a very critical thing in this case and I don't want the prosecutor getting their point to the jury by unanswered questions.'
 "As noted by the Fifth Circuit Court of Appeals in San Fratello v. United States, 340 F.2d 560, 565
(1965): `There is nothing about the government's right to have a witness claim his privilege in response to specific questions while on the stand under oath that requires it to be done in the presence of the jury.'
 "Another solution would have been to have discontinued the examination of this witness for the state once it became apparent that the witness did in fact intend to claim his privilege, as he had a right to do. This procedure met with our approval in the first trial of Nelson.
 "But, in the present case, neither solution was attempted. Instead, the prosecutor called Patrick to the stand, and, in the presence of the jury, asked 28 questions of Patrick outlining substantially in its entirety the state's theory of the case. As anticipated, Patrick claimed the privilege against self incrimination to each of the questions."
In the case at bar, the prosecutor's persistent confrontation of the witness, Irons, with multiple questions, approximately twenty-five in number, even though the prosecutor was informed in camera, and also after the questioning had begun, that Irons would not testify, supports a reasonable inference that the prosecution preferred to parade these questions before the jury, thereby impressing them with innuendoes and inferences of guilt prejudicial to defendant.
The trial court committed error in permitting such interrogation, although no answers were made, if for no other reason than that the defendant under such tactics was denied confrontation, a right of cross-examination, assured under the Sixth Amendment to the U.S. Constitution.
The court's frequent admonitions to the jury that they should not consider the questions as evidence, while at the same time permitting the questioning to continue over repeated objections of defendant, did not cure the error. A proper procedure under the circumstances would have been for the court ex mero motu to have excluded the jury and thus defendant's rights would have been protected.
It is no answer to the prejudice done defendant that the witness, under Willingham, supra, had waived his immunity from testifying. Regardless of such waiver, if applicable to the witness, Irons, so that he could not lawfully refuse to testify, he did refuse and continued to do so during the extended questioning.
The defendant did not invite or instigate the refusal; he had to sit with his hands tied while the parade of innuendoes and inferences went on and was denied by such procedure the right of cross-examination. The only thing the defendant could do was to object, which he frequently did, and suffer the consequences.
We hold that the trial court erred in overruling the defendant's frequent objections and in permitting the questioning to continue before the jury.
The foregoing opinion was prepared by the Honorable BOWEN W. SIMMONS, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.
The judgment below is reversed and the cause is remanded.
Reversed and remanded. *Page 663