TYSON, Presiding Judge.
The appellant, Dennis Gary Holt, was indicted for the first degree murder of one Teddy Morris. A jury found the appellant *537 guilty of second degree murder and fixed his punishment at ten years in the penitentiary. The trial court entered judgment in accordance with this verdict. The appellant applied for probation, which was denied following a hearing thereon. The appellant’s motion for new trial was also denied.
On August 3, 1975, around 12:00 midnight, the appellant, Dennis Gary Holt, and his father-in-law, Richard Craig, went to the apartment of the appellant’s ex-wife, Debra Holt (daughter of Richard Craig), for the purpose to see if Debra was “shacking up” with the now deceased, Teddy Morris, in the presence of the appellant’s four-year-old child whom Debra had retained custody of following her divorce from the appellant. Upon their arrival at the apartment, Mr. Craig went to the front door and knocked, while the appellant positioned himself outside the apartment’s rear window. A few moments later, the deceased, as anticipated by appellant, began his exit from Mrs. Holt’s apartment via the rear window where the appellant commanded, “Wait a minute boy.” The appellant stated that his .25 caliber pistol was in his back pocket at this time, and that the deceased, Morris, was armed, gun-in-hand. A push-pull struggle then began while the deceased was half-way out of the window, and their fight continued inside Mrs. Holt’s apartment, after the appellant either crawled or was pulled into the rear bedroom. The evidence indicates that their heated encounter continued for several minutes throughout the apartment; that at one point the appellant unsuccessfully attempted to unlock the front door and let his father-in-law, Mr. Craig, inside; that Mr. Craig finally kicked in the door and broke the fight up by taking the gun away from the appellant at which time Teddy Morris fell to the floor fatally wounded. According to the appellant’s testimony, he only struck blows with his gun; that his gun, which he never heard fire during the altercation, must have done so accidently when the deceased and his wife, Debra, who had come to the aid of the deceased during the fight, had him pinned against the television; that the first time he realized that the deceased had been shot was after his father-in-law had broken up the fight and the deceased had fallen to the floor.
Rick Thompson, an investigator for the Lauderdale County District Attorney, was the first person on the scene subsequent to the shooting incident. After making a determination that Teddy Morris was in fact dead, Mr. Thompson immediately went outside where the appellant, his father-in-law (Mr. Craig), and several others were standing. There Mr. Craig handed a gun to Mr. Thompson, and the appellant stated to Mr. Thompson, “It’s my gun and it shot him.” Mr. Thompson stopped the appellant from saying anything further, then had an Officer Curtis place the appellant under arrest and advise him of his Miranda rights. The appellant stated further in his testimony at trial that he did not notice Morris’ gun again, once their fight began, until his wife, Debra, picked it up off the living room floor and carried it into her bedroom about the time his father-in-law broke up the fight.
Debra Holt, who subsequently remarried the appellant seventeen days after the incident in question, claimed her privilege under Title 15, Section 311, Code of Alabama 1940, not to testify as a witness on behalf of, or adverse to, her husband-appellant when called by him during the presentation of his defense.
I
Outside the apartment, wherein the shooting occurred, a conversation took place between Debra Holt and the District Attorney’s investigator, Rick Thompson, during which Debra Holt allegedly stated to Mr. Thompson that just after Teddy Morris had fallen on the floor fatally wounded, the appellant kicked Morris in the head and exclaimed, “Was it worth it you son-of-a-bitch.” This alleged conduct of the appellant clearly bore on a fundamental part of the State’s case against the appellant, and the State unable to call appellant’s wife, Debra Holt, to establish what was done and said by the appellant moments after his encounter with Teddy Morris, sought to in *538 troduce her hearsay statement made to Mr. Thompson in this regard. The record reflects that the following transpired during the cross-examination of the appellant:
“Q. Isn’t it a fact that after you had shot him and he was lying there in the floor, I will ask you if you didn’t go over and kick him in the head and say ‘You son-of-a-bitch, is it worth it?’ [Emphasis supplied]
“A. No, I did not.
“Q. You say that didn’t happen?
“A. No, it didn’t happen.
“Q. Well, you heard your wife accuse you of saying that didn’t you?
“A. No.
“AN OBJECTION IS NOTED BY THE DEFENDANT ON THE GROUNDS IT’S ILLEGAL, IRRELEVANT AND IMMATERIAL, IT’S PREJUDICIAL, THERE IS NO EVIDENCE TO SUPPORT THAT AND DEFENDANT MOVES FOR A MISTRIAL BECAUSE OF SUCH PREJUDICIAL QUESTION ASKED IN THE PRESENCE OF THE JURY WHEN THE DISTRICT ATTORNEY KNOWS NO SUCH THING HAPPENED.
“THE COURT:
“We will sustain the objection ladies and gentlemen, and ask you not to consider in your deliberation that question or any import that question might have. The District Attorney is entitled to cross-examine this witness of course as to his recollection of the facts that concurred on this occasion, but we do instruct you specifically not to take into consideration that question.
“Mr. Holt:
“I would like to be heard on my motion for a mistrial.”
Upon overruling the appellant’s motion for mistrial, the trial court allowed the cross-examination to continue as follows:
“Q. The question I ask you now, Mr. Holt, is, after the shooting had occurred and you were placed under arrest, do you remember who placed you under arrest? “A. I believe it was Officer Curtis.
“Q. There were several of you standing around out in the yard wasn’t there?
“A. When I was placed under arrest, I was standing by the door.
“Q. The front door here?
“A. Right.
“Q. And your ex-wife was there to?
“A. I don’t know where she was.
“Q. You never did see her out there?
“A. No, not after she went out the door I didn’t.
“Q. You never did hear her talking to the police officers right here in your presence, right at the front door in front of the building?
“A. I didn’t see her talking to no police officers, no, I didn’t.
“Q. You never did see her any more, is that correct, after she left the building?
“A. Yeah. I saw her.
“Q. Where was she?
“A. She come out of another apartment and I was still in the patrol car.
“Q. You were already in the patrol car after you saw her?
“A. When I saw her last I was.
“Q. Isn’t it a fact Mr. Holt, that while you were standing right here (indicating), already under arrest, in front of Officer Womble, Officer Thompson and several other people, she sat there and told the officers about you kicking him in the head and calling him a son-of-a-bitch? [Emphasis supplied]
“A. No, She did not.
“Q. And said, ‘Was it worth it?’
“A. No.
“Q. You didn’t hear her say that?
“A. No, I didn’t.
“Q. And isn’t it a fact that when the officers led you off to go to the car, she screamed at you and said, ‘Now, is it worth it to you, you son-of-a-bitch?’
“A. No, I didn’t hear her say that.
“Q. You didn’t hear her call you that?
“A. No, I didn’t.
“Q. You say that didn’t happen?
“A. I said I didn’t hear her say that.”
After the appellant rested his case, the State, in rebuttal, offered the testimony of Rick Thompson, the investigator for the *539 District Attorney. Again, quoting from the record:
“Q. State whether or not Debra Holt said in your presence and in this defendant’s hearing and presence _ . _ Mr.
Holt:
“Now, excuse me for interrupting but I object to him asking a leading question such as is being asked in the presence and hearing of the jury. I object to it as being—
“THE COURT:
“Well, as I understand it, the predicate has been laid and I will allow him to ask it either way, either as he framed it the first time or either as he is framing it the second time. I overrule the objection. (The defendant excepts to the Court’s ruling).
“Mr. Johnson continues:
“Q. State whether or not Mrs. Holt said in your presence and in this defendant’s hearing and presence, that after Mr. Morris was shot and had fallen to the floor, this defendant went over and kicked him in the head and said, ‘Was it worth it you son-of-a-bitch?’ [Emphasis supplied] “AN OBJECTION IS NOTED BY THE DEFENDANT ON THE GROUNDS IT’S ILLEGAL, IRRELEVANT AND IMMATERIAL, IT’S PREJUDICIAL, IT CALLS FOR A CONCLUSION, IT’S HEARSAY AND INVADES THE PROVINCE OF THE JURY IN THAT HE ASKED WAS IT IN THE HEARING OF THIS DEFENDANT AND FURTHER, IT’S PREJUDICIAL AND IS ASKED SOLELY FOR THE PURPOSE OF PREJUDICING THIS JURY AGAINST THE DEFENDANT AND INFLAMING THEIR MINDS AGAINST THE DEFENDANT. OBJECTION OVERRULED BY THE COURT.
“A. Yes, she did.”
The appellant contends that the admission of Mr. Rick Thompson’s rebuttal testimony concerning the alleged statement made to him by his wife was prejudicial error which necessitates a reversal of his cause. The State insists that Debra Holt’s statement, although facially hearsay, was admissible since it was not offered for the truth of the matter asserted therein, but rather to impeach the prior testimony of the appellant.
We note on the outset that if Debra Holt had testified in the appellant’s cause, and her proffered testimony concerning the alleged conduct of her husband moments after Teddy Morris had been fatally wounded, materially varied from this prior statement given by her to Mr. Thompson, then this statement may be offered in evidence, not for the truth of the matter asserted therein, but to impeach her credibility as a witness by pointing out to the jury that on a previous occasion Debra Holt told her story differently. As Professor McCormick explains:
“The theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement is true, but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold, and raises a doubt as to the truthfulness of both statements.” See McCormick, Evidence, Section 34 at 68 (Second Edition 1972).”
However, we fail to see what aspect of the appellant’s testimony is under attack through this alleged extra-judicial statement made by Debra Holt other than the fact that the appellant stated he did not hear this or any statement made to Mr. Thompson subsequent to the shooting incident. The appellant’s ability to hear is not material to this case, and to allow the introduction of this hearsay statement, the content of which was highly incriminatory to the appellant, under the guise of impeachment was erroneous. The net effect of the statement’s admission was to set up its subject matter as direct evidence against the appellant in a form which effectively precluded the cross-examination and confrontation of its declarant, Debra Holt. Thus, the appellant was denied his right to confront and cross-examine witnesses as assured under the Sixth Amendment to the United States Constitution. Douglas v. Al *540 abama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); See Allison v. State, Ala.Cr.App., 331 So.2d 748, cert. denied, Ala., 331 So.2d 751; Shockley v. State, Ala.Cr.App., 335 So.2d 659, affirmed, Ala., 335 So.2d 663; Madison v. State, 55 Ala.App. 634, 318 So.2d 329, cert. denied, 294 Ala. 764, 318 So.2d 337.
Obviously, because Debra Holt was not subject to confrontation and cross-examination at trial, since she had declined to testify, the truth or falsity of the alleged statement could not be scrutinized. If the alleged statement was offered as direct evidence against the appellant, then clearly such constituted prejudicial error because there was no right of cross-examination.
Inasmuch as there was no effective way to test whether or not Debra Holt’s statement was the result of emotion, such as anger, the same should not have been admitted.
It should be noted in passing that Debra Holt was neither a co-conspirator with the appellant, nor is she a co-defendant in this cause.
We therefore conclude that the admission into evidence of this statement was erroneous.
For the error shown the judgment is therefore reversed and the cause remanded.
REVERSED AND REMANDED.
All the Judges concur except HARRIS, J., who concurs in result only.