Cedric Devon Thomas was convicted for the noncapital murder and robbery of Mae Bell Wright. That conviction was reversed inThomas v. State, 452 So.2d 899 (Ala.Cr.App. 1984). On remand, Thomas was reindicted and convicted for noncapital first degree robbery and murder. He was sentenced to two terms of life imprisonment. Four issues are raised on this appeal. *Page 629 
 I
In Thomas, 452 So.2d at 902, this Court held: "We have repeatedly held that an accused need not be informed of the precise criminal charges against him before he can effectively waive his rights under Miranda." Gadsden Police Captain William A. O'Bryant testified that he informed the defendant of the crime he was suspected of committing. The defendant's statement begins: "I am making this statement in regards to the death of Mrs. Wright. . . ." There is no merit to the defendant's contention that his confession was involuntary because he was not informed of the charges against him.
 II
The defendant argues that his second trial and conviction was barred by principles of former jeopardy because the State "broadened its prosecutorial base" and changed its theory of liability after the reversal of the defendant's first conviction.
The defendant was originally charged in 1983 in a two-count indictment with intentional murder, Alabama Code 1975, §13A-6-2 (a)(1), and with first degree robbery. He was convicted on each count. After reversal of his conviction on that indictment, the defendant was reindicted in 1984. That two-count indictment charged felony-murder, § 13A-6-2 (a)(3), and reckless murder, § 13A-6-2 (a)(2). The 1983 and the 1984 indictments were consolidated for trial and the defendant was convicted for first degree robbery and for "murder as charged in the indictment." The jury's verdict did not specify the type of murder.
The defendant's first conviction was reversed for an erroneous instruction by the trial judge. We are not concerned with an acquittal or with retrial on a charge dismissed by the State after prosecution had begun. The double jeopardy clause permits retrial if a conviction is reversed merely for trial error. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141,57 L.Ed.2d 1 (1978); United States v. Ball, 163 U.S. 662,16 S.Ct. 1192, 41 L.Ed. 300 (1896). On retrial, the State may prosecute under a different statute. United States v. Ewell,383 U.S. 116, 124-25, 86 S.Ct. 773, 778-79, 15 L.Ed.2d 627 (1966);Lowery v. Estelle, 696 F.2d 333, 340 (5th Cir. 1983); UnitedStates v. Poll, 538 F.2d 845, 847 (9th Cir.), cert. denied,429 U.S. 977, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976). See also Annot., 14 A.L.R.4th 970 (1982); 22 C.J.S. Criminal Law § 275 (1961). "We can perceive no constraints imposed by the double jeopardy clause on the scope of the subsequent prosecution after a defendant, once convicted of all that was charged, voluntarily and successfully challenges that first conviction on grounds other than insufficiency of the evidence." Lowery, 696 F.2d at 342.
 III
At trial, the State called co-defendant Calvin Turner as a rebuttal witness to testify against the defendant. Turner had been convicted for the capital murder of Mrs. Wright and sentenced to death. His conviction was on appeal when he was called to testify.
"It is error for the prosecution to call an accomplice or another witness to testify for the state if he knows the witness will invoke the Fifth Amendment." N. Chiarkas, AlabamaCriminal Trial Practice 219 (1981). See Busby v. State,412 So.2d 837 (Ala.Cr.App. 1982); Shockley v. State, 335 So.2d 659
(Ala.Cr.App. 1975), affirmed, 335 So.2d 663 (Ala. 1976);Allison v. State, 331 So.2d 748 (Ala.Cr.App.), cert. denied,331 So.2d 751 (Ala. 1976).
The general rule is stated in Annot., 19 A.L.R.4th 368, 373 (1983):
 "[I]t is improper for the prosecution to call as a witness one whom it knows will certainly invoke the privilege against testifying on the ground of self-incrimination, with the sole purpose or design of having the jury observe that invocation. Obviously, it is difficult to demonstrate that the prosecution had this sole purpose or design, and it would be necessary, in any event, to demonstrate *Page 630 
prejudice to the accused in order to effect the reversal of a conviction."
Co-defendant Turner invoked his "right to the Fifth Amendment" almost immediately upon taking the witness stand. Turner's testimony reflects that the District Attorney contacted him about testifying and Turner told the D.A. that he "[w]anted to see [his] lawyer about it."
The prosecutor continued to question Turner after the trial judge ruled that his questions were not incriminating. When Turner still refused to answer, the judge stated: "He's took the Fifth on two or three questions. There's no punishment you can do for him, contempt of court or anything for failing to answer when he's facing a death penalty. So, proceed with your trial."
Here, there is no evidence that the State called Turner with the purpose or design of having the jury observe Turner invoke his right against self-incrimination. Certainly, Turner was not entitled to claim any privilege. In Reina v. United States,364 U.S. 507, 513, 81 S.Ct. 260, 264, 5 L.Ed.2d 249 (1960), the United States Supreme Court recognized that there exists "weighty authority" for the proposition that "`the ordinary rule is that once a person is convicted of a crime, he no longer has the privilege against self-incrimination as he can no longer be incriminated by his testimony about said crime.'" See also Annot., 9 A.L.R.3d 990, § 3 (1966).
Under the circumstances, the defendant's right to a fair trial was not prejudiced. The State presented a strong case against the defendant. Turner was not extensively examined following the invocation of his testimonial privilege. Any prejudicial inference springing from his refusal to testify was merely cumulative of evidence already before the jury and added no "critical weight" to the prosecution's case. Busby, 412 So.2d at 843-44.
Turner's attorney objected at the defendant's trial that "[i]t is obvious . . . that the District Attorney is questioning him [Turner] from a statement that he allegedly made. By questioning him and asking him these questions he is seeking to substantiate that statement in open court." However, the D.A. never mentioned any statement Turner may have given. From the record, it does not appear that the prosecutor attempted to capitalize on Turner's invocation of his privileges, nor does it appear that the prosecutor attempted to read Turner's statement to the jury under the guise of a question. Cf. United States v. Compton, 365 F.2d 1 (6th Cir.), cert. denied, 385 U.S. 956, 87 S.Ct. 391, 17 L.Ed.2d 303
(1966). Our review convinces us that the error, if any, was harmless. 19 A.L.R.4th 368 at § 7 (b).
In passing on this issue, we note that the better rule of trial procedure is that "where a prosecutor knows, or has reason to suspect, that a witness will refuse to testify on self-incrimination grounds, the prosecutor should ask for a hearing outside the presence of the jury in order to determine, before calling the witness to testify, whether the witness intends to assert the Fifth Amendment privilege." 19 A.L.R.4th 368 at § 2 (a).
 IV
The defendant's trial began on the afternoon of August 27, 1984. Both sides rested on the afternoon of the 28th and the trial was adjourned for the day. On the morning of the 29th, defense counsel expressed his concern over a newspaper article which had appeared in the local paper on the 28th concerning the defendant's trial, the crimes charged, and the defendant's former trial, conviction, and reversal.
Defense counsel, admitting that he had "no idea whether any of the people on the jury read this article or not," requested the trial judge to poll the jury to see if any juror had read the article. The judge denied this request and stated that he would instruct the jury to disregard anything that they may have heard or read in the media. In his oral instructions, the trial judge charged the jury "to disregard anything that you may have read in any newspaper or any thing that you may have seen or *Page 631 
heard on T.V. or radio concerning this case or the facts of this case" and that the only thing they were to consider was what they had heard from the witness stand "and that alone."
Jurors should not be permitted, while in the discharge of their duty, to read newspapers containing statements of fact pertaining to the trial. Leith v. State, 206 Ala. 439, 444, 90 So. 687
(1921). "However, the fact that a juror has read a newspaper in which the case is discussed does not entitle the defendant to an automatic mistrial." Wiggins v. State, 429 So.2d 666, 668
(Ala.Cr.App. 1983). In the absence of any allegation that any juror actually read the newspaper article, we find no error in the judge's failure to poll the jury to determine whether or not any juror may have read the article.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.