MONTIEL, Judge.
The appellant, Darren Huff, was indicted for capital murder, in violation § 13A-5-40(a)(4), Code of Alabama 1975. A jury found the appellant guilty of the lesser included offense of murder, but his conviction was reversed by this Court’s opinion in Huff v. State, 596 So.2d 16 (Ala.Crim.App.1991). After a new trial, a jury found the appellant guilty of murder and the trial court sentenced the appellant to life imprisonment.
The facts adduced at trial tend to show the following. On September 26, 1990, the body of Minnie Hatcher was discovered in the bedroom of the Hatcher residence by Ms. Hatcher’s daughter. Ms. Hatcher had been *540 strangled. The bedroom was ransacked and a safe that was usually kept in Mr. and Ms. Hatcher’s bedroom was in the den. A witness, Alphonso Reese, identified the appellant as an individual he observed under the carport of Ms. Hatcher’s residence near the time of her death. The appellant appeared as if he were trying to get into Ms. Hatcher’s automobile. Reese never informed the police that he had previously had a small altercation with the appellant.
Another witness, Darnell Evans, testified that he knew the appellant. He stated that the appellant came over to his house in October 1986, and wanted to use the telephone. The witness testified that the appellant had told him that he was “in on an old lady’s murder.” Evans told the police about what the appellant had told him and Evans knew that there was a $10,000 reward offered for information leading to the conviction of the person who committed the crime.
When the appellant was arrested for the murder of Ms. Hatcher he gave a statement to the police that he was not involved in the robbery or in the murder of Ms. Hatcher. He stated that some individuals he had talked to at a club had told him that they were going to take some money from a place in the “field” (an area where the victim’s house is located) and asked him if he wanted to take part in the crime. The appellant stated that he told the individuals he was not going to take part in the crime. The appellant stated that several days later, he was told that the individuals he had spoken with had tried to steal a safe, but could not remove it. He further stated that he was told that the individuals “beat an old lady up and took her money.”
The police investigated the individuals that the appellant named in his statement, but found nothing to connect the individuals with the murder. The police confronted the appellant and told him that the individuals he named were not connected to the murder and the appellant acknowledged that he lied in his statement and stated that the individuals were not involved in the murder and neither was he.
Another individual, Jessie McDole, was also convicted and was serving a prison term for the murder of Ms. Hatcher. McDole allegedly gave a statement to the police which implicated the appellant in the murder of Ms. Hatcher. The State called McDole to the witness stand to testify at the appellant’s trial. Defense counsel objected to McDole being called as a witness since it was known that McDole would not answer questions and defense counsel argued that calling McDole as a witness would prejudice the appellant. Defense counsel’s objection was overruled, but the defense was granted a continuing objection during McDole’s testimony. During direct examination of McDole by the State, the following transpired:
“Q What were you convicted of?
“A Murder.
“Q Whose murder were you convicted of?
“A I don’t know.
“Q You don’t know the person you were accused of murdering?
“A (Shaked head)
“Q You have to answer, Mr. McDole. You can’t shake your head.
“A I said no.
“Q Do you know Mr. Huff there?
“A Yeah.
“Q How long have you known him?
“A I don’t know.
“Q You don’t know him?
“A (Shaked head)
“Q You have never seen him before?
“A (Shaked head)
[[Image here]]
“Q Did you know Minnie Hatcher during her lifetime?
“A No, sir.
“Q When were you sentenced, Mr. McDole?
“A I don’t know.
“Q Would it refresh your memory to tell you — were you sentenced in this courtroom?
“A Yeah.
“Q Would it refresh your memory, Mr. McDole, to indicate that you were sentenced to life, rather than ten years?
“A (No response)
*541 “Q You have to answer.
“A Yeah.
“Q Would it refresh your memory Mr. McDole, to tell you that the name of the victim in your case was Minnie Hatcher? Does that ring a bell with you?
“A (Nods head)
“Q You have to answer, Mr. McDole.
“A I ain’t got nothing to talk about.
“MR. CHESTNUT [Prosecutor]: Judge, I would ask you to instruct him to answer that question.
“THE COURT: Mr. McDole, you’re instructed to answer the question.
“MR CHESTNUT: You want me to repeat the question?
“A I don’t have anything to say.
“Q You’re ignoring the Judge’s instruction to answer the question?
“A I told my lawyer I ain’t got nothing to say.
“Q Are you ignoring the Judge’s instruction, Mr. McDole? What is your answer, Mr. McDole?
“A I ain’t got nothing to say.
“Q You want to consult with your client, Mr. Faile?
“MR FAILE [attorney for the witness] No, sir.
“MR. CHESTNUT: Judge, we are confronted here with a matter where he’s deliberately disobeying your instruction.
“THE COURT: Well, I [instructed] him to answer it. The only thing I can do is hold him in contempt for failure to do so.
“Q (By Mr. Chestnut, continuing) How long have you known Mr. Huff?
“A I don’t have nothing to talk about.
“Q Didn’t you and Mr. Huff, on September 26, 1986, enter the house at 2111 Eth-ridge Street, in the City of Selma, and murder Minnie Hatcher?
“MR. MCNEILL [Defense counsel]: I object to this question. It’s leading, argumentative, and it’s improper.
“THE COURT: Overruled.
“Q (By Mr. Chestnut, continuing) Did you understand the question, Mr. McDole? “A I don’t have nothing to talk about.
“Q Did you not, on December 30th, 1986, give a statement to police officers, Perry Owings, Selma Police officer, and Robert Jacobs, in which you admitted that you and Mr. Huff murdered Minnie Hatcher in her house on December [sic] 26, 1986?
“MR. MCNEILL: I object. I object to that question. It’s argumentative, and it’s leading. It’s doing nothing more than designed to try and prejudice the jury and I ask it be stricken and the jury accordingly instructed.
“MR. GREEN [Deputy District Attorney]: That’s a fact in this case. This man has been answering questions. We have every right to ask them.
“THE COURT: He started out answering the questions in this case. When he was asked questions, he didn’t assert the Fifth, other than his attorney, he began answering questions under examination. He waived privilege by answering those preliminary questions.
“Q (By Mr. Chestnut, continuing) What is your answer, Mr. McDole?
“A Nothing.
“Mr. McDole—
“THE COURT: Y’all approach the bench. “( ... out of the presence of the jury.)
“THE COURT: I do think at this point the State is playing with fire.
“MR. CHESTNUT: I think you’re right.
“THE COURT: If you go into that statement.
“MR. CHESTNUT: We’re not going to do that.”
At this point, the State did not proceed any further with questioning McDole. During cross-examination by defense counsel, McDole stated that he would not answer any questions that defense counsel had.
The appellant argues that calling the appellant’s convicted codefendant to testify and inquiring into his statement given to the police, constituted a denial of the appellant’s right to confront the witness under the Sixth and Fourteenth Amendments because the co-defendant refused to answer the questions posed. We agree.
*542 In Douglas v. Alabama, 380 U.S. 416, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the Supreme Court was presented with a similar issue to the one at bar. In Douglas, the prosecution called a witness who had previously been convicted of the crime for which Douglas was being tried. The prosecutor asked questions of the witness based upon a statement that the witness had provided to the police. The statement that the witness gave implicated Douglas in the crime. The witness refused to answer the prosecutor’s questions in reliance on the privilege against self-incrimination. The Supreme Court reversed the conviction in Douglas, stating that although the prosecution’s questions to. the witness and the witness’s refusals to answer were not technically testimony, the prosecution’s reading of the statement in the form of a question may have been considered the equivalent of testimony by the jury improperly inferring that the that the statement had been made and that the statement was true. Douglas, 380 U.S. at 419, 85 S.Ct. at 1077. Since the witness did not admit to making the statement, the witness could not be cross-examined on the statement and the defendant was denied effective confrontation of the witness. Id. at 419-20, 85 S.Ct. at 1077.
While the State in the case at bar did not read McDole’s entire statement into evidence, the State did pose a question to McDole which severely incriminated the appellant. The prosecutor asked: “Did you not, on December 30th, 1986, give a statement to police officers, Perry Owings, Selma Police officer, and Robert Jacobs, in which you admitted that you and Mr. Huff murdered Minnie Hatcher in her house on December [sic] 26, 1986?” Since McDole refused to answer questions regarding any statement he made to the police officers, the appellant was denied the right to confront the witness.
The State argues that since McDole’s statement was not read nor introduced into evidence, that the rule set forth in Douglas does not apply. We disagree. In Shockley v. State, 335 So.2d 659 (Ala.Crim.App.1975), we held that regardless of whether an alleged accomplice could lawfully refuse to testify, when the accomplice in fact refused to testify but the prosecution questions the accomplice which raised inferences of guilt prejudicial to the defendant, the trial court erred in overruling the defendant’s objections. In this case, the trial court erred in not sustaining the appellant’s objection and instructing the jury to disregard the prosecutor’s question.
“The accused has a constitutional right of confrontation and cross-examination which is an essential and fundamental requirement of a fair trial.” Anderson v. State, 362 So.2d 1296, 1301 (Ala.Crim.App.1978). Violations of the confrontation clause of the Sixth Amendment are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); see also, Busby v. State, 412 So.2d 837 (Ala.Crim.App.1982), cert, denied, (Ala. 1982). “The correct inquiry is whether, assuming that the damaging potential of the ... examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.” Hooper v. State, 585 So.2d 142, 146 (Ala.Crim.App.1991) (quoting Van Arsdall 475 U.S. at 684, 106 S.Ct. at 3384). “Each case must be examined on its own merits to determine whether, in light of all the surrounding circumstances, reversible error occurred.” Busby, 412 So.2d at 843.
In this case, none of the physical evidence, such as fingerprints and hair samples, obtained at the scene of the crime connected the appellant to the murder of Ms. Hatcher. Additionally, the testimony of the State’s witnesses, Reese and Evans, was suspect since one witness may have had a previous altercation with the appellant and the other witness was seeking reward money. While the appellate courts have held that it is not always reversible error for the prosecution to call a witness who will refuse to testify, Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151,10 L.Ed.2d 278 (1963) and Busby 412 So.2d at 843, the questions posed in this case, the fact that the trial court did not give curative instructions when requested, and the suspect testimony of other State witnesses, lead us to conclude that the error was not harmless beyond a reasonable doubt.
*543 Thus, the prosecutor’s question to MeDole, who was already convicted for the murder, inferring that MeDole stated that the appellant also committed the murder, was extremely prejudicial to the appellant. The questioning of MeDole was an improper attempt to use adverse inferences from his refusal to testify to establish the guilt of the appellant.
This case is due to be, and is hereby, reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.