TAYLOR, Presiding Judge.
The appellant, Darren Huff, was convicted of murder, a violation of § 13A-6-2, Code of Alabama 1975, in 1989. His conviction was reversed, Huff v. State, 596 So.2d 16 (Ala.Cr.App.1991), because of erroneous jury instructions that violated certain fundamental rights guaranteed to the appellant by the Constitution of the United States. On re-trial, the appellant was again convicted of murder. That conviction was reversed because the state had called the appellant’s convicted eo-defendant to the stand and had inquired into a statement implicating the appellant that the codefendant had given to the police. The codefendant answered some questions on direct examination before refusing to answer further, but refused to answer any questions on cross-examination. This court concluded that the appellant’s constitutional right to confront witnesses against him was violated. Huff v. State, 639 So.2d 539 (Ala.Cr.App.1993). The Sixth Amendment to the United States Constitution provides as follows:
“In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.”
This right is also guaranteed by the Alabama Constitution of 1901, which states:
“That in all criminal prosecutions the accused has a right to be heard by himself and counsel, or either; to demand the nature and cause of the accusation; to have a copy thereof; to be confronted by the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and, in all prosecutions by indictment, a speedy public trial by an impartial jury of the county or district in which the offense was committed; and that he shall not *295 be compelled to give evidence against himself, nor be deprived of his life, liberty, or property, but by due process of law.”
Article 1, § 6, Constitution of Aabama 1901.
In 1994, the appellant was again convicted of murder and was sentenced to life imprisonment. It is from this third conviction that this appeal is taken and upon essentially the same grounds as he asserted in his second appeal.
The appellant’s sole contention on appeal is that he was denied his Sixth Amendment right to confront witnesses against him and his Fourteenth Amendment right to a fair trial. This contention is once again based upon the fact that the state called a convicted codefendant to testify against him at trial and also based upon the prosecution’s reference in closing arguments to the codefendant’s testimony. Specifically, the appellant argues that he was unjustly prejudiced by being allegedly improperly linked to a man who had already been convicted of this murder, and that, because the accomplice refused to testify, he was denied his right of confrontation and his right to a fair trial. He argues that the jury was left to infer that because the accomplice had been convicted, this defendant must also be guilty. The state contends on appeal that this issue is not preserved for appellate review.
The record reveals that before trial defense counsel presented a motion in limine seeking an order preventing the state from calling the codefendant, Jessie McDole, as a witness. Defense counsel argued that the codefendant had refused to testify in the first two trials and that there was no new evidence that showed that he would now testify. Defense counsel stated:
“His mere presence, then, coming into the courtroom is prejudicial to my client. Not only does it deny him Sixth Amendment rights, but it’s also prejudicial from the standpoint of the jury seeing someone come in there that they’re wondering what is this man here for. They may have heard through the course of other testimony of other witnesses that Mr. McDole has been convicted of the murder of Mrs. Mini Hatcher, and then he’s up there on the stand and he has nothing to say. That’s highly prejudicial as far as my client is concerned because as far as those jurors are concerned, they’ve heard, ‘Here’s a man who has been convicted of Mrs. Hatcher’s murder, the State called him, [it]. obviously called him for a reason’ and I think any kind of instruction that the Court would give for the jury to try to disregard all that would just be [for] naught. They would have seen him up there, they would have heard what involvement he has in this case and it’s our position that, and for the purpose of this motion in limine is to totally restrict the State from mentioning anything about this .man, whether he’s going to testify or what, unless [it] can give testimony rather than sitting there and doing as he did in the second trial and responding, ‘I’ve got nothing to say.’ Or as he did in the first trial where he wouldn’t even open his mouth to say anything. He just sat [mute] the whole time. Based on all that, we feel that we’re entitled to a motion in limine that would prohibit the State from making any comments or remarks regarding Mr. McDole or calling him to the stand unless [it] can give assurances to the Court that he would in fact testify.”
The court denied the appellant’s motion in limine and stated:
“He’s a material witness to this case. He has a privilege not to testify. The State can call anybody [it] want[s] to that’s a material witness to testify. The threat of contempt obviously is not going to make the man testify if he doesn’t want to.”
The appellant again objected to his code-fendant’s testifying when the codefendant was called to the stand. The record shows that McDole was handcuffed and shackled when he was brought into the courtroom. Defense counsel voiced the following objection and requested a mistrial:
“I have an objection to this witness coming in the courtroom in this manner, being brought in chained and manacled. It’s highly prejudicial to my client because there’s already been testimony that he’s been convicted of this crime and he’s bringing him in this manner, it’s highly *296 prejudicial to my client. Again we restate our objections previously had on the two previous occasions. This man has refused to testify and to bring him in here again particularly dressed in the manner he is, chains on his hands and legs, it’s extremely prejudicial to my client.”
The trial court again overruled the objection and allowed McDole to be questioned. McDole invoked his Fifth Amendment right to remain silent, and he refused to testify. The trial court placed him in contempt. Defense counsel then made the following objection:
“Your Honor, I would again enter the objections that I have previously entered in this case concerning the State calling Mr. McDole as a witness. As the Court saw, Mr. McDole certainly stated to the Court that he did not intend to testify and being held in contempt of court was of no use or benefit to compel, him to testify. That he [was] brought into this courtroom, as far as this jury is concerned, is highly prejudicial from the standpoint of my client. The State knew from two previous trials in this matter that exactly what happened here this morning was a very likely probability, yet [it] went forward and brought Mr. McDole in here for the sole purpose to prejudice this jury, and because of this, we find this conduct was highly improper and we would, one, ask for a mistrial in this matter based on the present prejudicial nature of the State’s calling Mr. McDole in here. Or, two, in the alternative, we would ask the Court to give an instruction to the jury telling them to totally disregard anything with respect to Mr. McDole. That that’s not to be considered in their making a decision in this case and that they’re not to let that enter into their process of deliberating on the guilt or innocence of my client, Darren Huff.”
(Emphasis added.)
At the close of the state’s case, the appellant again moved for a mistrial based upon the allegedly prejudicial nature of the presence in court of the codefendant. During the discussion on the motion, the trial court stated “I think we’re going to have a reversal again based on what [the Court of Criminal Appeals] said in the last decision.” The state’s attorney then apparently asked the appellant directly whether he would like a mistrial. The attorney then stated to the court for the record that the state was not opposed to the court’s declaring a mistrial. Defense counsel evidently concluded that reversible error had already occurred and at this time withdrew his motion for a mistrial. However, this was not the first or only motion for a mistrial made. Defense counsel, during the course of the trial, voiced numerous objections to the codefendant’s presence and moved for a mistrial when McDole was brought to the courtroom in handcuffs and shackles, stating that the appearance of the codefendant in this condition prejudiced the appellant. The court, denying the motion, stated: “I don’t believe they could have seen the chains from where he’s standing.” This issue was not waived for purposes of appellate review.
There are repeated references in the transcript to the appellant’s codefendant and the outcome of the state’s case against him. Detective Robert Jacobs testified to the following:
“Q [prosecutor]: You also collected hair samples from one Jessie McDole; is that correct?
“A: Yes, sir.
“Q: Now, had he been arrested and charged with an offense at that time?
“A: Yes.
“Q: And do you know about what happened to his case?
“A: Yes, sir.
“Q: What happened?
“A: He was convicted.
“Q: Of this offense?
“A: Yes, sir.”
Also, during closing argument, the state referred to the codefendant’s testimony, saying that the jury had heard evidence from the appellant’s codefendant.
We hold that the trial court erred in denying appellant’s motion in limine and his motion for a mistrial. We note:
“The general rule is that the denial of a motion in limine, without more, does not *297 rise to the level of reversible error. Where the party seeking the exclusion of the evidence suffers an adverse ruling on its motion in limine, that party
“ ‘can preserve the ruling for post-judgment and appellate review only by objecting to the introduction of the proffered evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary.’
“Parks v. State, 587 So.2d 1012, 1015 (Ala.1991) (emphasis in original). See also Ex parte Phillips, 527 So.2d 154, 156 (Ala.1988). Similarly, where the party seeking to introduce the evidence suffers an adverse ruling on the opposing party’s motion in limine, the adverse ruling alone, ‘unless ... [i]t is absolute or unconditional, ... does not preserve the issue for appeal.’ Perry v. Brakefield, 534 So.2d 602, 606 (Ala.1988).”
Morton v. State, 651 So.2d 42, 45 (Ala.Cr.App.1994). Here, defense counsel not only made a motion in limine but also objected numerous times to the “mute testimony” of MeDole.
This court has stated the following concerning the state’s calling a witness who it knows will invoke the Fifth Amendment right to remain silent.
“[T]his court in Thomas v. State, 473 So.2d 627 (Ala.Cr.App.1985), stated the general rule when the prosecution calls an accomplice or another witness to testify for the State, knowing the witness will invoke the Fifth Amendment.
“ ‘ “It is error for the prosecution to call an accomplice or another witness to testify for the state if he knows the witness will invoke the Fifth Amendment.” N. Chiarkas, Alabama Criminal Trial Practice 219 (1981). See Busby v. State, 412 So.2d 837 (Ala.Cr.App.1982); Shockley v. State, 335 So.2d 659 (Ala.Cr.App.1975), affirmed, 335 So.2d 663 (Ala.1976); Allison v. State, 331 So.2d 748 (Ala.Cr.App.), cert. denied, 331 So.2d 751 (Ala.1976).
“ ‘The general rule is stated in Annot., 19 A.L.R.4th 368, 373 (1983):
“ ‘ “[I]t is improper for the prosecution to call as a witness one whom it knows will certainly invoke the privilege against testifying on the ground of self-incrimination, with the sole purpose or design of having the jury observe that invocation. Obviously, it is difficult to demonstrate that the prosecution had this sole purpose or design, and it would be necessary, in any event, to demonstrate prejudice to the accused in order to effect the reversal of a conviction.” ’
“Thomas, 473 So.2d 627, 629-30.”
Gamer v. State, 606 So.2d 177, 181 (Ala.Cr.App.1992). See also Limbaugh v. State, 549 So.2d 582 (Ala.Cr.App.1989); Thomas v. State, 473 So.2d 627 (Ala.Cr.App.1985).
As this court further stated in Terry v. State, 540 So.2d 782 (Ala.Cr.App.1988), cert. denied, 540 So.2d 785 (Ala.1989), overruled on other grounds, J.D.S. v. State, 587 So.2d 1249 (Ala.Cr.App.1991):
“It is improper for the prosecution to call as a witness one it knows will certainly invoke the privilege against testifying as a witness, with the sole purpose of having the jury observe that invocation. See An-not., 19 A.L.R.4th 368, 373 (1983); Allison v. State, 331 So.2d 748, 750-51 (Ala.Cr.App.), cert. denied, 331 So.2d 751 (Ala.1976); Shockley v. State, 335 So.2d 659, 661-62 (Ala.Cr.App.1975), affirmed, 335 So.2d 663 (Ala.1976), all involving a claim of the privilege against self-incrimination. ‘ “[Wjhere a prosecutor knows, or has reason to suspect, that a witness will refuse to testify on self-incrimination grounds, the prosecutor should ask for a hearing outside the presence of the jury in order to determine, before calling the witness to testify, whether the witness intends to assert the Fifth Amendment privilege.” 19 A.L.R.4th 368 at § 2(a).’ Thomas v. State, 473 So.2d 627, 630 (Ala.Cr.App.1985) (emphasis added [in Terry ]).”
After the last motion for a mistrial was made, the trial court did instruct the jury to disregard the presence of MeDole. However, it was impossible to instruct away *298 the effect of the presence of the convicted codefendant. A jury instruction was not sufficient to eradicate the prejudice to the appellant. As previously stated by this court:
“ ‘[Djespite a corrective instruction, once such statements are made, the damage is hard to undo: “Otherwise stated, one ‘cannot unring a bell’; ‘after the thrust of the saber it is difficult to say forget the wound’; and finally, ‘if you throw a skunk into the jury box, you can’t instruct the jury not to smell it.’ ” Dunn v. United States, 307 F.2d 883, 886 (5th Cir.1962).’ ”
Quinlivan v. State, 579 So.2d 1386, 1389 (Ala.Cr.App.), writ quashed, 596 So.2d 658 (Ala.1991), quoting United States v. Garza, 608 F.2d 659, 666 (5th Cir.1979). We have a duty to consider what happened in the courtroom, not just what was said — a picture is worth a thousand words. .
The trial court’s ruling was erroneous for another reason. As this court stated in Stokes v. State, 462 So.2d 964, 966-67 (Ala.Cr.App.1984)
“A survey of the Alabama cases on this point reveals that disclosure of the outcome of a co-defendant’s ease has been denounced whether it occurred in argument, see Knowles v. State, 44 Ala.App. 163, 204 So.2d 506 (1967) (Prosecutor’s statement that other defendants had already pled guilty). Bell v. State, 41 Ala.App. 561, 140 So.2d 295 (1962) (Prosecutor’s statement that co-defendant had confessed); Lowery v. State, 21 Ala.App. 352, 108 So. 351 (1926) (District attorney’s comment that one person had already been convicted); Felder v. State, 20 AlaApp. 603, 104 So. 444 (1925) (Prosecutor’s comment that, ‘The other man had pleaded guilty’), in the State’s ease-in-chief, see Williams v. State, 369 So.2d 910 (Ala.Crim.App.1979) (State’s witness asked whether he testified in case when co-defendant was convicted); Lane v. State, 40 AlaApp. 174, 109 So.2d 758 (1959) (State asked co-indict-ee the outcome of his prosecution); Evans v. State, 39 AlaApp. 498, 105 So.2d 831 (1958) (District attorney asked accomplice whether he was guilty of same offense with which defendant was charged), or during the presentation of the defense, see Dickens v. State, 49 Ala.App. 480, 273 So.2d 240 (1973) (Defendant questioned, on cross-examination, about co-defendant’s guilty plea); McGhee v. State, 41 Ala.App. 669, 149 So.2d 1 (1962) (Defendant sought to present evidence of co-defendant’s acquittal); Hill v. State, 210 Ala. 221, 97 So. 639 (1923) (Defendant claimed his own prosecution should be barred by accomplice’s acquittal).
“In all of the Alabama cases cited above, the reviewing courts have disapproved of reference to the disposition of a co-defendant’s case on the theory that the outcome of another’s prosecution is simply irrelevant to the guilt or innocence of the defendant and may not be received as substantive evidence at defendant’s trial. See, e.g., Hill v. State, 210 Ala. 221, 97 So. 639 (1923).”
The state further contends that the court committed no error because, it says, the co-defendant no longer had a right to claim Fifth Amendment protection, having already been convicted of the crime for which he was called to the stand to testify. This issue was addressed in Limbaugh, supra, and Shockley v. State, 335 So.2d 659 (Ala.Cr.App.1975), aff’d, 335 So.2d 663 (Ala.1976). In Limbaugh this court stated:
“ ‘ “It is error for the prosecution to call an accomplice or another witness to testify for the state if he knows the witness will invoke the Fifth Amendment.” N. Chiarkas, Alabama Criminal Trial Practice 219 (1981). See Busby v. State, 412 So.2d 837 (Ala.Cr.App.1982); Shockley v. State, 335 So.2d 659 (Ala.Cr.App.1975), affirmed, 335 So .2d 663 (Ala.1976); Allison v. State, 331 So.2d 748 (Ala.Cr.App.), cert. denied, 331 So.2d 751 (Ala.1976).’
“Thomas v. State, 473 So.2d 627, 629 (Ala.Cr.App.1985)....
“However, the law with regard to the questioning of witnesses who have invoked their Fifth Amendment privilege against self-incrimination in a refusal to testify is found in the United States Supreme Court decision in Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), *299 wherein that Honorable Court wrote as follows:
“ ‘We decide today that the Confrontation Clause of the Sixth Amendment is applicable to the States. Pointer v. Texas, ante, 380 U.S. p. 400 [85 S.Ct. p. 1065, 13 L.Ed.2d p. 923 (1965)], Orn-eases construing the clause hold that a primary interest secured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation. As the Court said in Mattox v. United States,
“ ‘ “The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits ... being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.” 156 U.S. 237, 242-243 [15 S.Ct. 337, 339^0, 39 L.Ed. 409 (1895) ].
“ ‘See also 5 Wigmore, Evidence §§ 1365,1397 (3d ed.1940); State v. Hester, 137 S.C. 145, 189, 137 S.C. 145, 134 S.E. 885, 900 (1926).’
“Id., 380 U.S. at 418-19, 85 S.Ct. at 1076-77. This ruling is, of course, controlling as to this point. Indeed, it was recognized as dispositive of this issue by Alabama courts in the case of Shockley v. State, 335 So.2d 659 (Ala.Cr.App.1975), aff’d, 335 So.2d 663 (Ala.1976). In Shockley, this court stated that regardless of whether the witness had waived his immunity from testifying, so that he could not lawfully refuse to testify, where he did continually refuse to testify during extensive questioning, the fact that his Fifth Amendment claim may not have been valid did not remove the prejudice from such questioning. Id., 835 So.2d at 662. In essence, we held that it is not the witness’s right which is in question, but rather, the right of a defendant to a fair trial which is at the crux of such a matter.”
Limbaugh,- 549 So.2d at 587-88. (Emphasis added.)
In Shockley, this court stated:
“In Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), it appears that petitioner, the defendant in Alabama, an alleged accomplice as here, was tried separately in the State court for assault with intent to murder. Another alleged accomplice was called as a State’s witness in petitioner’s (defendant’s) trial, but repeatedly refused on self-incrimination grounds to testify. Under the guise of cross-examining the accomplice as a hostile witness, the prosecution, over defendant’s objections and despite the accomplice's multiple refusals to answer (as here), read in the presence of the jury the latter’s purported confession which implicated the petitioner. The confession was read in the form of questions to the witness. The jury convicted the petitioner.
“Petitioner’s inability, so the court said, to cross-examine the alleged accomplice about the purported confession and the reading of the confession, may well have been treated by the jury as substantial and cogent evidence of guilt, and denied him the right of cross-examination secured by the Confrontation Clause of the Sixth Amendment, which is made applicable to the states by the Fourteenth. Petitioner’s objection adequately preserved his denial of a federal constitutional right regardless of its adequacy under State law. The Supreme Court of the United States reversed and remanded.
“The United States Circuit Court of appeals in Sanders v. U.S., 373 F.2d 735 (9 Cir.), held that the refusal of a witness who claimed Fifth Amendment privilege, to answer certain questions, ‘... [Ajdded critical weight to a prosecution’s case in form not subject to cross-examination, and thus prejudiced appellant Sanders. These inferences affected his substantial rights.’”
Shockley, 335 So.2d at 661.
The court once again erred to reversal in allowing evidence of the codefendant’s con *300 viction and allowing the state to call the codefendant as a witness when it did so with knowledge that he would invoke his Fifth Amendment right not to testify. Not only was the appellant prejudiced but his basic constitutional right to confront the witnesses against him was violated.
This error is not harmless. Even “ ‘overwhelming evidence of guilt does not render prejudicial error harmless under Rule 45, Ala.R.App.P.’ ” Ex parte Malone, 575 So.2d 106, 107 (Ala.1990), quoting Ex parte Lowe, 514 So.2d 1049, 1050 (Ala.1987). See also Greathouse v. State, 624 So.2d 208 (Ala.1993). It is moreover apparent that the state did not consider the evidence of guilt overwhelming because the prosecutors felt the need to resort to a procedure that had been used in an earlier trial and that had resulted in a reversal. The question is whether the substantial rights of the appellant were violated. It is clear from the record that they were.
For the foregoing reasons, the judgment is reversed and the cause remanded to the Circuit Court for Dallas County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
PATTERSON and McMILLAN, JJ., concur.
COBB, J., dissents with opinion with LONG, J., joining.